MARY HAMILTON, late wife of JOSEPH HAMILTON, late wife of ALEXAN-
DER ADAMS, and formerly wife of JOHN PATTON *against* ABRAHAM
BUCKWALTER.

By 389
151 350

Devise to a wife of lands during widowhood, is a bar of dower though not so express-
ed; so where the implication is strong and necessary, that the wife shall not have
both the devise and dower, or where the devise is inconsistent with her claim, she
shall be put to her election.

DOWER of one messuage, one barn one orchard, six acres of meadow,
90 acres of arable land, and 204 acres of wood-land, in Lampeter
township, in Lancaster county.

The tenant pleaded, that John Patton, the late husband of the de-
mandant, devised to her all his lands in Lampeter township, to hold dur-
ing her natural life of widowhood, she making no waste thereon; but
in case she married, then she was to leave the plantation, on receiving
50*l.*, a horse and saddle, with her bed and bed clothes, in lieu and sat-
isfaction of her dower; also, a release of demandant's dower.

The demandant replied, protesting that she did not accept the said
devise and bequests, after the death of her said late husband, in recom-
pence of her dower, for plea she saith, that the said John Patton did
not devise the same to her in recompence of her dower; and this she
prays may be inquired of by the county; and further saith, that she
made no release of her dower; on which issues were joined, and the
cause came on to trial at Lancaster, at Nisi Prius, on the 27th October
1792, but the jury could not agree on their verdict, though they were
kept together for about twelve hours, without refreshment. It came
on again at Nisi Prius, on the 27th September 1796, before Yeates and
Smith, justices, when it was admitted that the aforesaid John Patton
died seized of the lands in question, leaving the demandant his widow.
No evidence was given by the tenant on the plea of the release. Parol
evidence was offered of the contents of a release said to be lost or mis-
sing, which had been executed by Alexander Adams, (her second hus-
band,) and herself the demandant; but the tenant not having used due
diligence in searching for the original paper, the same was overruled.
The same laches and negligence occurred on the former trial, and pro-
duced the same consequence.

On the first issue, the will of John Patton, dated 9th March 1758,
was shown in evidence. He thereby devised to Robert Patton, his eld-
est son, a certain southern part of his lands, marked by a division lien,
for the term of six years, for his double share; to his daughters Eliz-
abeth and Margaret, 50*l.* each, at their respective ages of fourteen
years; and to his son John, another part of his lands in fee simple
whereon the testator lived, marked also by a division line, situate in

Lampeter township; and to his son Robert the southern division of his lands, a small part thereof lying in Leacock towship.

The will then proceeded thus; " Also, I give to my loving wife all my lands in Lampeter township, in the county of Lancaster, to hold during her natural life of widowhood, she making no waste thereupon; but in case she marries, she is then to leave the plantation, she receiving 50*l.*, a horse and saddle, with her bed and bed clothes; and in case she be now with child, whether male or female, they are to have the sum of 50*l.*, bearing interest from the time they are fourteen until they come of age, whether he or she, and he or she is likewise to have their clothing, maintenance and schooling, until such time as they come of fourteen; and if it chance to be a male, he is then to be put to a trade, such as he likes best; but if a girl, she is then to have her maintenance while she remains single; but in case my wife should not be with child, I allow this last 50*l.* to be equally divided amongst my other children; and in case any of the girls should die, I will her part to be divided amongst the rest; but if any of the boys, the other is to possess his part of the lands, he paying 100*l.* to the girls.

" I likewise allow my wife to take 100*l.* and take out a deed, the same to be taken out in Robert's name, and Robert is to give a deed to his younger brother John, as is aforementioned, for his part, the deed to be taken out in eighteen months after my decease. Also, I give to my wife all the household goods, only such as is unnecessary, as the wagon, ploughs and harrows, horses and cows, are to be sold at public vendue for the use of my children. I allow my wife all the interest till such time as the children come to the ages aforementioned, to help her in clothing maintaining and schooling them; and after my debts and funeral expenses are paid, the remainder shall be equally divided among my children." He afterwards appointed his wife sole executrix in trust for the intents and purposes in his will, and John Patton and Anthony M'Cracken overseers of his will; and in case his widow should marry again, she was to lose her *preheminence*, and they were to be sole executors of his will.

The tenant then gave in evidence the administration account passed by Adams and his wife, after their intermarriage, on the estate of the said John Patton, in the register's office, on the 4th March 1762, whereby it appeared that they had been credited with the widow's legacy of 50*l.*, also with the horse and saddle bequeathed to her, appraised at 15*l.*, and with the bed and bed clothes, appraised at 11*l.* and that a balance remained in the hands of the executors of 15*l.* 9*s.* 11*d.* On the same day, the Orphans' Court approved of and con-

firmed the account, and appointment three persons to value the rents of the plantation since the widow's intermarriage with Adams, who on the 25th March following, reported to the Orphans' Court that they had valued the rent and crop at 14*l.*, and the widow was allowed 50*l.* by the court, for maintaining and bringing up the minor children.

The evidence being closed on the part of the tenant, the demandant demurred thereto. The tenant's counsel filed a written statement, wherein they contended that he ought not to be compelled to join in demurrer, unless the facts alleged by the tenant, and to which the evidence related and was produced, be confessed by the demandant to be true.

1st, That by the will it appears by fair and necessary implication, that the testator intended the several devises and legacies therein contained in favour of his wife, to be in lieu and satisfaction of dower. And 2d, That the defendant accepted the same in lieu of dower, and made her election to take the same devises and legacies under the said will, and waived her right of dower.

At length the counsel for the tenant joined in demurrer, submitting the operation thereof to the decision of the court in bank, and withdrew the second plea of a release; and the jury were discharged from giving any verdict.

The argument on this demurrer to evidence, came on before the court on the 28th December 1796, in bank.

Messrs Ingersoll and E. Tilghman for the tenant, contended, that the party who demurs to evidence, admits it to be true, and also all conclusions which may be inferred by the jury, from presumption and probabilities, and cited Bull. Ni. Pri. 313.

Mr. C. Smith for the demandant agreed, that the demurrer to evidence stated, might be found by the jury, in favour of the party offering the evidence. Doug. 127, 129. But the correct rule is stated in Vernon's and Scriven's Irish Reports, 452 455, as follows; on a demurrer to evidence, the case will be taken, as if the jury had determined on the evidence in its fullest applicable extent, and the party will have the benefit of the utmost latitude of possible relevant conclusion.

The arguments of the counsel and the authorities cited by them are omitted in this report, as they were chiefly detailed by the justices when they delivered their opinions, *seriatim* this term,

after holding the matter under advisement for a considerable time.

M'Kean, C. J. stated the case and will at full length, and then observed in substance as follows :

It appears that all the testator's lands in Lumpeter township were devised to the widow, during her natural life of widowhood ; and the rest of his lands were devised to Robert Patton, the eldest son, for six years. These devises are entirely inconsistent with the claim of dower. The widow could not hold the lands in Lampeter township under the will, and the eldest son hold the residue of the lands, while she held in dower the one third part of both tracts, at common law. The will provides expressly, that in case of her second marriage, she shall leave the plantation, and receive a certain sum of money, and sundry specific articles, which it appears by the administration account, have been paid and delivered to her ; and the implication hereon, is both strong and necessary, that the widow shall not have both the devise and the dower. Two of the instances therefore, mentioned by the court in Kennedy v. Nedrow and wife et al. (Dall. 418. ) wherein equity will interpose against the wife, exist in the case before us.

But moreover, the estate devised to the wife during widowhood, is a freehold interest, determinable on her own act only. Moor 31. And it appears by the same case, that such a devise, may be well pleaded in bar of dower, where the widow entered by force of the testament, and afterwards married. Her possession by virtue of the will, is not only a suspension, but an entire extinguishment of her right of dower.

For these reasons, and because the assignment of dower to the demandant, would evidently disappoint the clear manifest intentions of the testator, I am of opinion, that judgment should be rendered for the tenant.

Shippen J. This is the case of dower, in the very lands devised to the widow, by her husband. If it be a devise for her life, it is an extinguishment of her dower, and absolutely inconsistent with it. Had the devise been expressly during her life, there could be no doubt of its extinguishing her claim of dower ; and the question then is, whether the devise being during her widowhood, her claim of dower is only suspended, till she married again, or whether it was equally an extinguishment, as if it had been expressly for her life ? In the case of a jointure to the use of the wife, *durante viduitate*, it is settled in 4 Co. 2. *b*. 3. *a*. and in Co. Lit. 36. *b*. that it is an estate for her life, as

it cannot be determined, but by her own act.  The case most nearly resembling this in the books, will be found in Moore, 31, case 102, already mentioned; where the husband devised all his lands to his wife, during her widowhood, of which the land for which dower was brought was part, it appears, that she accepted the devise and entered into the land, and afterwards married.  One judge was of opinion, that her claim of dower was only suspended during her widowhood, but the other two were of opinion, that it was a bar of her dower, upon the principle mentioned in Coke, that it was an estate for life, which was devised to her, as it could only be determined by her own act of marrying again. My opinion therefore is, that judgment be given for the tenant.

Yeates J.  It is clear at law, that a devise by the husband to the wife generally, where the will is silent in other particulars, cannot be averred to be for the jointure of the wife, and in satisfaction of her dower. Co. Lit. 36. b. Bro. Abr. Dower, pl. 69. Cites 6 Edw. 6.

For this, Lord Coke assigns two reasons.  1st. Because a devise implies a consideration in itself, and shall be deemed a benevolence. 2d. Because the whole will concerning lands, by the statutes of 32 and 34 Hen. 8, ought to be in writing, and no averment ought to be taken out of the will, which cannot be collected from the words contained in the will.  4 Co. 4. *a.* Vernon's case. 14 and 15 Eliz.

The same rule of decision obtained in the Court of Common Pleas,

Hil. 1698, between Lawrence and Dodwell. 1 Ld. Raym. 438. 1 Lutw. 734.  But William Lawrence, the first remainder man, exhibiting his bill in chancery, to be relieved against the judgment, in dower, and to have an execution of the trusts of the testator's will, a perpetual injunction was decreed against the widow, by Lord Chancellor Somers, on the 21st November 1699.  Yet upon a rehearing, before Lord Keeper Wright, he reversed so much of the former decree, as awarded a perpetual injunction against the widow's proceedings at law ; and ordered, that so much of the bill, as sought relief touching the matter of dower, should stand dismissed, on the 18th November 1702.  Anthony Lawrence, the next remainder man, brought a new bill for relief ; but Lord Chancellor Cowper, on the 5th December 1715, did not think fit to make any variation on the point of the widow's being entitled to dower.  From this decree, there was an appeal to the House of Lords ; who on the 17th May 1717, finally affirmed the decree of reversal. 1 Bro. Parl. Cas. 593, 594, 597. 2 Vern. 365. 2 Freem. 234.  1 Equ. Ab. 218, pl. 2. 2 Equ. Ab. 386, pl. 5, 388, pl, 14.  8 Vin. 361, pl.

22. 9 Vin. 248, pl. 15. This being a leading case, I have thought proper to trace the history of it minutely, in all its stages.

In the same manner, a recovery was had at law in dower, in Hitchins v. Hitchins. But on the dowress bringing a bill in equity, to set aside a a satisfied mortgage, which was set up to keep her out of possession, the degree of Lord Somers, in Lawrence v. Lawrence, was cited, that the lands devised to her, being much better in value than her dower, should bar her thereof in equity ; Lord Keeper Wright declared, that it should not ; for whatever is given her by will, shall be intended a bounty, and not in satisfaction of what was her right, unless it had been so expressed. 2 Freem. 241. Prec. Cha. 133. Mich. 1700.

Previous hereto, Trin. 22 Car. 2, a determination was made by the Lord Keeper, in Pheasant v. Pheasant, that the acceptance of the feme of matters devised to her by her husband, cannot be averred to be in satisfaction of dower. 1 Cha. Cas. 182.

A string of cases in chancery followed the final decree in Lawrence v. Lawrence, and were consonant thereto. Lemon v. Lemon, by Lord Chancellor Parker. 8 Vin. 366. Trin. 5 Geo. 1. Charles et al. v. Andrews, by Lords Commissioners Raymond and Gilbert. 9 Mod. 152. 2 Equ. Ca. Ab. 388, pl. 14. Pasch. 11 Geo. 1, and the following resolutions by Lord Chancellor Hardwicke. Galton v. Hancock. 2 Atky. 427, in 1742, Finney v. Finney. 3 Atky. 8, 1 Wils. 34, in 1743. Incledon v. Northcote, in which a distinction is taken between a claim of dower, overturning a will *in toto*, and the widow's taking out an *excrescent* interest for a time, and the estate afterwards going on as the testator intended it. 3 Atky. 437, in 1746. Ayers v. Willes. 1 Vez. 230, in 1749, and in Pitt v. Snowden. 1 Bro. Cha. Ca. 14, 292, (appendix) mentioned by the Solicitor General, in F. Ves. jun. 522.

Thus an uniform system of decision prevailed in the courts of equity, for above sixty years.

At length, Lord Northington determined, that where it was the manifest intention of the testator, to give his widow an annuity, in satisfaction of dower, (though not so expressed) by his disposition of all his freehold estates, subject to the annuity to her, her claim of dower would be in contradiction to the will, and she must therefore be put to the election of either the one, or the other. He admitted the principle in Lawrence v. Lawrence ; but I confess my mind cannot ascertain the distinction between the two cases. Ambl. 466. Arnold v. Kempstead and wife, in 1764.

This was succeeded by Villareal v. Lord Galway. An annuity was

there also devised to the widow for life, and subject thereto all his real
and personal estate was devised to trustees, on other trusts. Lord
Camden thought the annuity, if taken, a bar of her dower, for two
reasons. 1. To allow the claim of dower would disappoint the will.
2. The dower and annuity were inconsistent with each other. He
was of opinion, there was a necessary implication to bar the dower, as
there was no fund for her claim of both; and that it was exactly the
same thing, whether the testator had said, she shall be barred, or had
so disposed of his property, as to leave no fund to answer the double
claim. He is also made to say, that he did not controvert the case of
Lawrence v. Lawrence.  Ambl. 682, in 1769.

Mr. H. Hargrave in note 6, on Co. Lit. 36. b. considers these two
cases so specially circumstanced, as to justify a deviation in equity,
from the general rule of law.

Again, where the testator likewise devised an annuity to his widow,
and subject thereto, and also to another annuity to A, he devised all
his lands to trustees for certain uses, Sir Thomas Sewell, master of the
rolls, held, that it was a question of intention. It was not necessary,
that the testator should expressly declare his intention. It was suffi-
cient, if it appeared from circumstances.  Ambl. 732, Jones v. Col-
lier et al. in 1773.

Lord Loughborough, Ashurst and Hotham commissioners, seem to
recognize the authority of the cases of Arnold v. Kempstead, and Vil-
areal v. Ld. Galway; but declared, that an annuity devised to a wife,
was not a bar of dower unless so expressed, or the value of the estate was
so small as to be insufficient to satisfy the annuity and dower. There
must be in the will an evident intention to bar the wife of dower by
the devise.  1 Bro. Cha. Ca. 292, Pearson v. Pearson, in 1783.

Lord Loughborough also declared, that where the natural construc-
tion of the words of a will was, that in case the widow married again,
she should have only 100l. per annum, and she elected her dower, she
could not take the annuity also, because she would thereby defeat the
testator's intention.  Ib. 445, 447, Boynton v. Boynton, in 1785.

Where the testator bequeathed to his widow 100l. to be paid out of
his personal estate, and after some particular dispositions, gave all
his estate and effects, subject to an annuity of 35l., to his widow for
life, upon trust, for a son, whom he made his residuary legatee, Bul-
ler, J. declared it to be a case of election, notwithstanding the great
disproportion between her annuity and dower, which was about 80l. per
annum. 1 F. Ves. jr. 335.  3 Bro. Ch. Ca. 255, Wake v. Wake, in
1791.

But in Foster v. Cook, afterwards in 2791, where the testator

devised all his real and personal estate to trustees, (and directed them to possess themselves of all of his estates and substances after his decease,) to pay his wife an annuity of 50*l.* a year, during widowhood, and in case she should marry again, then to pay her an annuity of 30*l.* a year only, Lord Thurlow expresses himself strongly :—" The wife has a charge upon the estate paramount the will ; she has an absolute right to the third part, it is not his to deprive her of it. But here, it is to be gathered from circumstances, that she is not to have it ; and because he gives all his property to trustees, I am to gather from his giving all he has, that he has given that which he had not. So far from a declaration plain, I have nothing even to lead me to think he meant to deprive her of dower. She must therefore have her dower." 3 Bro. Cha. Ca. 347, 351.

This case considerably impugns the principle laid down in the cases in Ambler, already cited. To take from its authority, it has been said by counsel, *arguendo*, to have been an amicable cause, and decided without argument. 1 F. Ves. jr. 520.

Lord Commissioner Eyre thus expresses himself:—" Tenancy in dower is an estate in land, different from the other estate in land. There testators disposed of their own estates, and that estate was not theirs. There the words did not *ex vi terminorum* pass the estate in dower. The particular intent that it should, was to be made out ; and here it is that those who have decided those cases, have seemed to differ, for no two cases being precisely the same in circumstances, it can hardly be said that they differ." 1 F. Ves. jr. 527. 4 Bro. Cha. Ca. 28, Blake v. Bunbury 792.

Where a testator gave all his real and personal estate to trustees, to lay out on mortgages, and to pay his wife 80*l.* a year, and for other purposes ; and after her death, to make a sale thereof, &c. Lord Chancellor Loughborough declared the wife entitled to her dower, and also to the annuity. 4 Bro. Cha. Ca. 409, Middleton v. Cater, in 1793.

And in the latest case published, the master of the rolls comments on the different determinations had in claims of dower, and establishes the principle, that a widow shall not be put to her election to take under the will of her husband, or her dower, except by express declaration, or necessary inference from the inconsistency or her claim with the dispositions of the will. 2 F. Ves. jr. 572, French v. Davies, in 1795.

Amidst this seeming diversity of opinion, (as it is called,) the question is, what rule we shall adopt ? On the one part, it must be confessed, that the cases at law are uniformly in favour of

the demandant, and that the greater part of the decrees in equity are so likewise. On the other part, there are late decisions in equity of a different complexion ; and many of the others appear to be repugnant to the real and decided intentions of the testators, and have contravened the dispositions which they had made of their property. I have formed my judgment on the best consideration which I have been able to give the case, but not without many struggles, after a careful review of the different determinations.

On the variety of authorities, I consider myself at liberty to determine for myself, on the will immediately before me. Dall. 178. Vaugh. 383. I take the intention of the testator to be the great governing rule in the construction of wills, provided it be agreeable to law. 1 Burr. 233, 272, 273, 554, 555, 556. 4 Burr. 2246. 4 Bro. Cha. Ca. 460. I can see no rational ground, for making dower the single exception to the general rule. The principle, that wills must be consistent with law, is not to be applied to the construction of words, but to the nature of the estates themselves. 2 Atky. 580. Cases upon wills have no great weight, unless exactly similar in ever respect. 2 Wils. 324. 3 Wils. 247. They should be *in verbis ipsissimis*. Barr. on Stat. 370. And is laid down, that while the construction of wills should be favorable to the intent of the parties, it should be agreeable to common understanding. 3 Bla. Com. 379. 1 And. 60. 1 Bulst. 175.

Here then, John Patton devises to the demandant, his late wife, " all his lands in Lampeter township, to hold during her natural life of widowhood, she making no waste thereupon. But in case she marries, she is then to leave the plantation, she receiving 50*l.* a horse and saddle, her bed and bed clothes," &c. An estate, *durante viduitate* is considered as an estate for life, since it only can be determined by the voluntary act of the woman. 4 Co. 3, *a.* 30, *a.* Moore. 31, pl. 103. How then could the demandant hold the whole of the lands during life, under the will as a benevolence, and at the same time hold one-third part thereof in Dower, by title paramount ? Against what tenant should she bring her writ, in order to have dower assigned her ? Is it compatible with the terms of the will, that she should leave the plantation on her second marriage, and yet be in possession of one-third part thereof ? Will she not disappoint the devises as to the two sons, Robert and John, by an assignment of her dower ? I forbear a third detail of the case from Moore 31, wherein Weston and Benlows differed from Dyer. It is similar to the present case, and may be said to run on all-fours.

Two of the exceptions, mentioned in Dall. 418, from the general

rule, are here obvious. 1st. The implications, that the wife shall not have both the devise and the dower, is strong and necessary. 2dly. The devise is entirely inconsistent with her present claim. And I may be allowed to add, her claim if supported, would over-turn the will, in a considerable part at least.

It is an established rule, that devises must stand, as they were at the time of making the will, and not be constructed by any after-act or collateral contingency. Forrest. 26. 1 F. Ves. jr. 475. A court of justice may in the construction of a will necessarily imply an intention not particularly specified in words, but not on arbitrary conjecture though founded on the highest degree of probability. 3 Term Rep. 473. A necessary implication is that which leaves no room to doubt. 4 Bro. Cha. Ca. 461. I apprehend, that the testator here, from the dispositions in his will, which embrace the whole of his estate both real and personal, has excluded all doubt, and that his intentions are reduced to a moral certainty.

Again. When a man takes upon himself to devise what he had no power over, upon a supposition, that his will will be acquiesced under, Chancery will compel the devisee, if he will take advantage of the will to take entirely and not partially under it; there being a tacit condition annexed to all devises of this nature, that the devisee do not disturb the disposition which the devisor has made. Forrest. 182, 183. 2 Vern. 581. Gilb. Equ. Rep. 3, 15. This is said to be the settled rule in equity. 1 F. Ves. jr. 523, 546. 4 Bro Cha. Ca. 24.

If this principle be applicable, the demandant could not hand the lands under the will, and yet have her dower therein. She could not insist on continuing in possession, after receiving 50l. and the specific legacies directed to be given to her on leaving the premises. Her claim would be evidently inconsistent with the express terms of the will, and incompatible with the plain intention thereof. She, together with Adams her second husband, have shown their sense of the will, by agreeing in the Orphans' Court to the appointment of three persons, to value the whole of the rents since her second intermarriage, and she has voluntarily acquiesced therein, since March 1762, until the time of bringing this action.

The light in which I have viewed the present will, renders it unnecessary for me to consider the effect of the demurrer to evidence, or to what extent it admits conclusions of fact, which the jury might have inferred from the proofs given.

On the whole import of the evidence, I am of opinion, that judgment should be entered for the tenant.

Smith J. I am bound by the current of the book cases, and

find myself compelled to give a different decision. It is my duty to express my own sentiments, and the grounds on which they have been formed.

By the rules of the common law, a right or title which any one has to any lands or tenements, of any estate of freehold, cannot be barred by acceptance of any manner of collateral satisfaction, 4 Co. 1 a. b. Co. Lit. 36.

A devise by will to a wife, cannot be averred to be in satisfaction of her dower, unless it be so expressed in the will. Co. Lit. 36. b. 4 Co. 4 a. Prec. Cha. 133. 1 Vez. 55. 7 Bro. P. C. 21.

Agreeably hereto, have been the determinations in Lawrence v. Lawrence, and Hitchins, v. Hitchins already cited.

F. Lemon devised lands to his wife, and other lands to his brother and his heirs; the wife of the testator enters into the lands devised to her, but not expressed to be in lieu of dower, which were of more value than her dower; she afterwards brings dower against the devisee of the other lands, and recovers against him with costs. He brings his bill in equity to be relieved against the judgment. Lord Chancellor Parker said, this point has already been determined by the house of Lords, that there is no relief in this case in equity, and dismissed the bill. 8 Vin. Abr. 366. MS. Rep. Lemon v. Lemon,

B in his life-time gave a bond in the penalty. 1000l. of in trust to secure F 500l. in case she survived him; parol evidence to show that it was intended at the time in lieu of dower, and that F acknowledged it to be so, cannot be allowed; a general provision for a wife is not a bar of dower, unless expressed to be so. 3 Atky. 8. 1 Wils. 34. Finney v. Finney.

The cases of Pearson v. Pearson, and Foster v. Cook, have already been mentioned; and the strong expression of Lord Thurlow in the latter, noted.

The intention that a devise should be in satisfaction or lieu of jointure, must appear either from the express words of the will, or the clear and manifest intention of the testator appearing on the face of it to be drawn by necessary implication from it; and it was resolved, that a devise was not a bar of jointure. 7 Bro. Parl. Cas. 18. Broughton v. Errington. In Dom. Proc. 1773. In Pitt v. Snowden, before Lord Harwicke, notwithstanding the annuity was given out of freehold messuages described, with a clause of entry and distress, and the freehold was given subject to the annuity to the very woman who was of have dower, yet she was entitled to both. Said by counsel *arguendo.* 1 F. Ves. jr. 522.

The opinion of Dyer in Moore 31, which has been cited, although

contradicted by the two other judges, seems founded in good sense and sound reason, and it appears to me, that the possession of the premises by the wife under her husband's will was only a suspension of her claim of dower, during the time. The result is. I have considered the case before us, with all the attention, of which I am capable. I have weighed the foregoing authorities in one scale, and the adverse cases in the other. In principle and reason the last preponderate ; but the authority of the first is too great for me to get over. At thee same time, I rejoice that the rest of the court feel themselves at liberty to decide upon principle and reason, unfettered by the determinations by which I feel myself bound, contrary to the wish and inclination of my mind. Were there no authorities, was it a question of intention, I would not I could not hesitate to say, that the devise would be a bar of dower. But although the foundation upon which it is supposed to be a bar, is, the direction that she shall leave the place on her marriage, receiving 50l. &c., I feel no application of that rule. For had the widow been unquestionably entitled to dower, she could not have retained the land till dower had been assigned to her ; but the devisees would have recovered in ejectment, as has in two instances been determined in this court, (though indeed contrary to my opinion.)

Upon the whole, I find my self compelled to say, that judgment should be given for the demandant. But by tne opinion of the other judges, judgment must be entered for the tenant.

Judgment for the tenant.