## Thomas C. Fetrow v. Cassie R. Krause et al.

1. LOCO PARENTIS—*Claims for Support and Services.*—Where the relationship of *loco parentis* exists, no claim for support on the one hand, or for services on the other, is permitted, no express agreement being shown and none arising by implication from the conduct or situation of the parties.

2. LEGACIES—*Effect of, to Creditors.*—Where a legacy is given to a creditor, and the legacy is equal to or greater in amount than the existing debt, and is of the same nature with the debt, where it is certain and not contingent, and no particular motive is assigned for the gift, the legacy will be deemed a satisfaction of the debt; and there is no difference whether the debt is due to a stranger or to a child.

3. SAME—*Exceptions to the Rule.*—The rule stated will not be allowed to prevail where the legacy is less in amount than the debt, even as a

satisfaction *pro tanto;* nor where there is a difference in the times of payment of the debt and of the legacy; nor where they are of a different nature as to the subject-matter or as to the interest therein, nor where there is an express direction in the will for the payment of the debt.

**Bill for an Accounting.**—Appeal from the Circuit Court of Cook County; the Hon. John Gibbons, Judge, presiding.   Heard in this court at the October term, 1895.   Reversed and remanded with directions. Opinion filed December 12, 1895.

Heckman & Elsdon, attorneys for appellant; John S. Huey, of counsel.

G. Frank White, attorney for appellees.

Mr. Justice Shepard delivered the opinion of the Court.

By his bill in equity the appellant sought an accounting from the estate of his grandfather, Jacob Fetrow, deceased, for certain moneys and property left him by the last will of his father, Cyrus J. Fetrow, deceased.

Cassie R. Krause, the appellee, was the widow of the said Jacob Fetrow, and residuary legatee and devisee under his last will.

It is said in the brief for appellant, and is seemingly acquiesced in by appellee, that the following facts are admitted by all parties, to wit:

" 1.   Cyrus J. Fetrow executed his last will and testament March 26, 1874, and died three days thereafter, making his father, Jacob Fetrow, his executor, leaving to Jacob Fetrow two hundred and fifty dollars ($250); to Susan E. Fetrow, his widow, twelve hundred dollars ($1,200); and the remainder of his estate to his son, Thomas C. Fetrow, the complainant herein; but provided in his will that Jacob should have charge of the same until Tom should become twenty-one years of age, using it as he might think best so as to increase it as much as possible, the whole to become the property of Tom when he should arrive at twenty-one years of age.

2.   Under the authority given him in said will, Jacob

Fetrow, although he never probated the will, received from various sources moneys belonging to Cyrus J. Fetrow's estate aggregating $3,420.95, of which amount he was entitled to retain for himself $250, leaving a balance of $3,170.95.

3. Cyrus J. Fetrow and wife conveyed to Jacob Fetrow, by warranty deed bearing the same date as Cyrus' will, eighty acres of land in Iowa.

4. Jacob Fetrow executed his last will and testament, bearing date the 14th of October, 1889, and died the 19th day of January, 1891, in and by which said last will and testament he provided :

1st. That his debts be fully paid.

2d. That complainant, Thomas C. Fetrow, his grandson, should receive under said will $2,000 in money, and real estate consisting of ten lots in Irving Park, Cook county, Illinois.

3d. That the mayor of Princeton, Illinois, should receive $500 in trust, and,

4th. That all the residue and remainder of his estate should go to his widow, Cassie R. Fetrow, whom he married in 1885.

This will was probated the 27th day of January, 1891, and makes no illusion in any manner to the funds that had been received by him as executor of Cyrus J. Fetrow's will.

5. Jacob Fetrow retained his son Cyrus' will in his possession, from the time of Cyrus' death in 1874 until his death in 1891, and Cassie R. Fetrow, executrix of the will of Jacob Fetrow, found Cyrus' will, unprobated, among the private papers of Jacob Fetrow after his death, and delivered the same to John S. Huey, guardian of Thomas C. Fetrow.

6. Jacob Fetrow at no time rendered any account, in his official or representative capacity as executor or trustee or guardian, of the moneys or property which came into his hands under his son Cyrus' will.

7. Jacob Fetrow sold the Iowa land in 1885, which Cyrus conveyed to him three days before his death, but

neither he nor his estate has accounted to Tom for either the rents or the proceeds of sale derived from this land, although Jacob Fetrow charged the taxes on this land to Tom.

8. Thomas C. Fetrow, the complainant, is the only child of Cyrus, and Cyrus was the only child of Jacob Fetrow.

9. Cassie R. Krause, the residuary legatee and devisee under Jacob Fetrow's will, has received from Jacob's estate $10,000 cash from the sale of real estate which was devised to her under said will, and about $9,000 cash bequeathed to her under said will, and holds the title, under said will, to a considerable portion of real estate devised to her, besides various notes and accounts which came to her under said will, while Tom has received the $2,000 bequeathed to him, and the ten Irving Park lots."

It was proved in the case that the Irving Park lots devised to appellant by his grandfather, cost Jacob Fetrow $2,400 in February, 1881, and, at the time of Jacob Fetrow's death, were worth $10,300, or thereabouts.

Appellant, therefore, received under the will of his grandfather, Jacob Fetrow, the cash legacy of $2,000, and the devise of lots worth about $10,000.

The entire estate left by Jacob Fetrow was worth $30,000, or, perhaps, a little more.

After the death of appellant's father, in March, 1874, he, the appellant, then being an infant about eight months old, went with his mother to live with his grandfather, Jacob Fetrow, and continued to live there uninterruptedly until the death of his grandmother, Jacob Fetrow's first wife, a period of about ten years.

The master, to whom the cause was referred, found that he stayed with his grandfather from March 29, 1874, until June 8, 1884, and again, some time after that last named date and prior to March 21, 1890, thirty-four weeks; and from March 21, 1890, to January 19, 1891, which was the date of his grandfather's death, a period of forty-three weeks, and charged him, in the account he stated, with six

dollars a week for support by his grandfather during those periods.

We state the finding of the master in such regard for the purpose of showing that the appellant did, in fact, spend by far the greater part of the time with his grandfather after his father's death, until the grandfather also died.

From the master's report it further appears that after paying the specific legacies provided by the will of appellant's father, and the expenses of his funeral and last sickness, there remained in the hands of Jacob Fetrow in trust for appellant, the cash sum of $1,808.84, and that Jacob Fetrow received $800 for the Iowa land on June 22, 1885. These two amounts comprised the entire estate of Cyrus J. Fetrow which remained in the hands of Jacob Fetrow for the benefit of appellant.

The master in his account allowed said sums in favor of appellant, and charged against them the support of appellant at the rate of six dollars a week during the time in which he was found, as aforesaid, to have lived with his grandfather, and two claims of $100 each paid by the estate of Jacob Fetrow for the use of appellant, and some taxes paid on the Iowa land.

Allowing what was, perhaps, proper interest both ways, the master's conclusion was that the charges for the support of appellant, together with said two claims, and the taxes, overbalanced what Jacob Fetrow received for appellant from his father's estate by the sum of $788.32.

The master also found that the devise of the Irving Park lots and the legacy of $2,000 made by the last will of Jacob Fetrow to appellant, operated as a satisfaction of the debt or liability Jacob Fetrow was under to the appellant, growing out of his trust relationship to appellant under the will of the latter's father, independently of the fact that, according to his account, the appellant had been overpaid in other ways.

The decree of the Circuit Court approved the master's report in all respects, and dismissed appellant's bill for want of equity.

The case here, it will be observed, must depend upon the decision of two principal questions of law:

First.   Can the claim for the support of appellant, while he lived with his grandfather, be set off against moneys which the grandfather held in trust for appellant under the will of his father?

Second.   Was the legacy of $2,000 in money and the devise of the Irving Park lots, made by the will of Jacob Fetrow to appellant, a legal satisfaction of what was owing from the former to the latter under the trust created by the will of appellant's father?

It is either conceded or established that appellant was the only child of his father, who was, likewise, the only child of Jacob Fetrow, and that therefore appellant was the only lineal descendant of said Jacob Fetrow; and that notwithstanding his mother remarried when he was about five years old and removed to Iowa, he remained with his grandfather until he was about eleven years old, and up to the time of the death of his grandmother, Jacob Fetrow's first wife, in 1884; that thereafter he spent part of the time prior to Jacob Fetrow's death with his mother and part with his grandfather.

It was proved that Jacob Fetrow always expressed great interest in appellant, as his only grandchild, and that he wanted to keep him with him even after the remarriage of appellant's mother.   Taking into consideration the relationship and all the conduct of Jacob Fetrow toward appellant, first taking him to his home when a baby, and there providing him with support and education, and the evidences of affection, for ten years uninterruptedly, and then again having him at his home for long periods after his mother's remarriage, but before her death, and also after her death, the inference is well nigh conclusive that Jacob Fetrow's intention was to stand in *loco parentis* to appellant, and that he did so stand.   Under such circumstances no charge by Jacob Fetrow's estate for the support of appellant ought to or can be sustained.   Where the relationship of *loco parentis* exists, no claim for support on the one hand, or for services on the other, is permitted, no express agree-

ment being shown, and none arising by implication from the conduct or situation of the parties. Capek v. Kropik, 129 Ill. 509; Mowbry v. Mowbry, 64 Ill. 383; Brush v. Blanchard, 18 Ill. 46; Miller v. Miller, 16 Ill. 296, Williams v. Hutchinson, 3 Comstock 312; Guild v. Guild, 15 Pick. 129; Thorp v. Bateman, 37 Mich. 68; Hudson v. Lutz, 5 Jones (N. C.) 217; Dodson v. McAdams, 96 N. C. 149; Murdock v. Murdock, 7 Cal. 511.

See, also, McClory v. Lancaster, 44 Ill App. 212.

It does appear, however, by the same memorandum book, found among Jacob Fetrow's private papers and kept in his handwriting, by which the amount of money received by Jacob Fetrow from the estate of appellant's father was established, that Jacob Fetrow had charged against that fund the taxes paid upon the Iowa land, and also cash advanced to and for appellant commencing in the month of May, 1874, and ending in August, 1889, aggregating nearly $600. Of that sum, the master in his account allowed the amount of $37.17 paid for taxes, but made no mention of the other items. It was probably the master's theory that all such cash advances, except taxes, should be included in the sum of six dollars per week allowed by him under the charge for general support.

Holding, however, that a charge for general support is not sustainable, the question arises, should these specific charges for cash advanced be allowed.

We think they should be. They comprised a continuation in the same book and in Jacob Fetrow's handwriting, of the account offered in evidence by appellant, and relied upon by appellant to prove his claim against the estate, and were offered in evidence in behalf of the estate. If the account were good for one purpose, it was good for all that it proved, in the absence of evidence disproving particular parts of it. It may well be, that while Jacob Fetrow did not intend to charge appellant for board and care, he did intend to charge him for cash advanced to him. What the account shows should be taken into account between the parties, and be allowed except as to any items that may be disproved.

Coming now to the second question, the general rule is, that where a legacy is given to a creditor—and the legacy is equal to or greater in amount than the existing debt, and is of the same nature with the debt, where it is certain and not contingent, and where no particular motive is assigned for the gift—the legacy will be deemed a satisfaction of the debt.

But although this general rule is well established in equity, it is said to have so little foundation, either in general reasoning, or as a just interpretation of the intention of the testator, that slight circumstances will be taken hold of to create exceptions to it; that it will only be applied in cases which fall exactly within the rule, and that its operation will never be enlarged. Thus, it will not be allowed to prevail, where the legacy is less in amount than the debt, even as a satisfaction *pro tanto;* nor where there is a difference in the times of payment of the debt and of the legacy; nor where they are of a different nature as to the subject-matter or as to the interest therein; nor where there is an express direction in the will for the payment of debts; nor for numerous other causes not pertinent to this case.

And there is no difference whether the debt is due to a stranger or to a child. Story's Equity Juris., Secs. 1119 and 1122; 1 Pomeroy's Eq. Juris., Secs. 527 to 539; 2 Redfield on Wills, 186 to 193; 2 Beach on Mod. Eq. Juris., Sec. 1053.

In our opinion this case falls within each one of the above stated exceptions. The legacy of $2,000 was less than the debt. The debt was not payable until appellant arrived at twenty-one years of age; the legacy was payable upon the death of the testator, several years before the event of appellant attaining majority. The debt was not due by Jacob Fetrow in his own personal right, but as the executor or representative of appellant's father's estate, and the legacy was purely personal as to both testator and legatee; and there was an express direction in the will of Jacob Fetrow to pay his debts.

The case of Van Riper v. Van Riper, 1 Green (2 N. J. Eq.),

is one, in many essentials, like this.  That was the case of a bill for an accounting against the estate of a grandfather who had administered upon the estate of his son.  The facts were admitted, and the defense made that the debt had been satisfied by certain devises and legacies made by the grandfather to the complainants, who were the children of his son.

The chancellor, in his opinion, says what is quite applicable to the case at bar:

" The debt may also be considered in this case, in a measure unliquidated; he had never settled his accounts as administrator.  They are all open to this day.  * * * This case is, in my judgment, made stronger from the fact that the debt due by the testator was not in his own personal right, but as the representative of another man's estate. From all these circumstances it would be going too far, and pressing the rule beyond its proper limits, to consider the provisions made in this will in the light of a satisfaction to the complainants."

The text writers already cited, and numerous of the authorities collected by them, state the doctrine clearly, that the devise of the real estate to appellant can not be regarded under any circumstances disclosed by the record here, as payment of any part of the debt due him.

Considering, therefore, the nature of the debt itself, as was done in the Van Riper case, *supra;* its different nature from the legacy; its time of payment; its amount, computed by the rules applicable in such cases, as compared with the legacy of $2,000 made in money; and the will of Jacob Fetrow providing that all his debts should be paid; and all the evidence shown upon this record, our conclusion is that it was the intention of Jacob Fetrow to make the appellant, his grandson and only lineal descendant, the object of his bounty to the extent of the legacy and devise to him.

The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to that court to enter a decree in favor of the appellant for the amount that may be due him upon a computation which shall allow him the sum of $1,808.84, with interest thereon compounded an-

nually from March 29, 1874, and the further sum of $800, received June 22, 1885, by Jacob Fetrow for the Iowa land, with interest likewise compounded annually from said last named date; and charging appellant in said computation with all charges shown upon said memorandum book, except in so far as any items thereon appearing, whether for taxes paid, or otherwise, may have been disproved (if any), and with the two claims of $100 each paid for appellant by the estate of Jacob Fetrow to Craddick and Ireland, on November 12, 1891, compounding interest annually on each of said items so to be charged against appellant, from their respective times of payment. Interest to be computed on all sums paid prior to July 1, 1891, at the rate of six per cent per annum to that date, and thereafter at the rate of five per cent per annum, and on all sums paid subsequent to that date at the rate of five per cent per annum. Reversed and remanded with directions.

Mr. Justice Waterman dissents.