(No. 15647.—Decree affirmed.)

CORA A. BAKER, Appellant, *vs.* CARRIE J. LITTON *et al.* Appellees.

*Opinion filed February 19, 1924—Rehearing denied April 2, 1924.*

1. WILLS—*intention of testator must be gathered from the will.* The purpose of construing a will is to ascertain the intention of the testator and to give that intention effect, and while it is proper for the court to hear evidence concerning extrinsic matters in order that it may place itself in the position of the testator, the intention must be gathered from the will itself.

2. SAME—*when devisee must elect to take under will or keep interest claimed in the property devised.* Where a testator clearly indicates an intention to devise in its entirety specific property of which he owns only an undivided interest or portion, a devisee who owns an interest in the property devised must elect to take under the will or keep her own interest, and where she has accepted the devise she must surrender her interest in a portion which is devised to another devisee.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

GREEN & PALMER, and HOMER SHEPHERD, (ORIS BARTH, of counsel,) for appellant.

DOBBINS & DOBBINS, and F. B. LEONARD, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

William Henry Cosner died testate January 2, 1917. The only clauses of his will which it is necessary to quote are the following:

"To Cora A. Baker, my daughter, I will the southwest quarter of S. W. quarter of section 17, except portion leased as a churchyard; also northwest quarter of northwest quarter of section 20, all being in T'p 22, north, range 8, east of the 3d P. M.; also part of lot 8 and lot 9 of block 1 of J. H. Linebarger's addition to village of Fisher, Champaign Co., Ill.

"To Carrie J. Litton the southeast quarter of southwest quarter of section 17, except seven acres belonging to S. G. Stevenson; also the northeast quarter of northwest quarter of section 20, all being of T'p 22, north, range 8, east of 3d P. M."

Considering these clauses alone, without reference to extrinsic matters, the testator's intention is clearly expressed. By the first clause he gives to his daughter the west eighty (excepting the churchyard) and the two lots in Fisher, and by the second clause he gives to his foster-daughter the east eighty (excepting seven acres.) In his lifetime and at the time of his death Jacob L. Cosner was the owner in fee simple of the lands above described. By his will he gave his son, William, a life interest in said lands and gave the fee to William's daughter, Eliza M. Cosner.

December 5, 1909, Eliza died, leaving as her only heirs her parents and her half-sister, Cora A. Baker. May 25, 1910, William's wife died without living children. When William died he was the owner of an undivided half of the lands in question, his daughter, Cora A. Baker, was the owner of an undivided one-third, and the collateral heirs of William's wife (referred to in the record as the Gentry heirs) owned an undivided one-sixth of said lands. When Cora was about two years old her mother and father were divorced, and Cora has lived with her mother since that time. While she has visited her father infrequently, she has not, since she was taken away by her mother, lived with him nor in the same county where he resided. Carrie J. Litton, a relative of William's wife, was raised in their home and has been treated by them as a daughter. Albert, the husband of Carrie, has purchased the interests of the Gentry heirs and is now the owner of an undivided one-sixth of the quarter section. William's will was admitted to probate and both Cora and Carrie accepted the lands devised to them, and they divided the personal property between themselves equally, as the will directed. Cora contracted to sell the west eighty, and in order to clear her title she filed a suit seeking partition of the lands. By her bill she alleged that she acquired an undivided half interest in said lands by the will of her father and that she inherited a one-third interest in the lands from her half-sister. A decree was entered accordingly. She also filed a bill seeking to partition the east eighty, alleging that she was the owner of an undivided one-third interest in that tract of land. Carrie filed her cross-bill, alleging that Cora by her conduct had elected to waive her claim to an interest in the east eighty and asked for a decree directing her to convey to Carrie whatever interest she claimed. A decree was entered in accordance with the prayer of the cross-bill, and from this decree this appeal was prayed and perfected.

The purpose of construing a will is to ascertain the intention of the testator and to give that intention effect. While it is proper for the court to hear evidence concerning extrinsic matters in order that it may place itself in the position of the testator, the intention must be gathered from the will itself. We are unable to see how it can be seriously contended that William Henry Cosner intended to do other than what he has clearly done. By the language of his will he has conveyed in fee simple to his daughter and foster-daughter, respectively, the tracts of land which he has specifically described. "Where the testator has a partial interest in the property devised or bequeathed by his will, the necessity of an election is always much less apparent than where he purports to bestow property in which he has no interest whatever. In such cases it is a settled rule that courts will lean, as far as possible, in favor of an interpretation which shows an intention of the testator to give only the interest, estate or share which he is enabled, by virtue of his own right, to deal with, or to give the property in its present condition, subject to all existing incumbrances and charges upon it. It requires a strong, unequivocal expression or indication of an intent on the part of the testator to bestow the entire property and not simply his own interest in it, or to bestow the property freed from its incumbrances and charges, in order to raise the necessity for an election. The affirmative branch of the rule is equally well settled, that if a testator is only entitled to a partial interest in the property, as where he owns an undivided share or a future estate or holds the property subject to some incumbrance or charge, and uses language of description and donation which shows an unmistakable intention on his part to dispose of the entire property or the property free from the existing incumbrance or charge, and if the owner of the other part or holder of the incumbrance or charge also receives benefits under the will, then a case for an election by such beneficiary is presented." (1 Pome-

roy's Eq. Jur.—4th ed.—sec. 488.) "If a testator owning an undivided share uses language of description and donation which may apply to and include the whole property and by the same will gives benefits to his co-owner, the question arises whether such co-owner is bound to elect between the benefits conferred by the will and his own share of the property. *Prima facie* a testator is presumed to-have intended to bequeath that, alone, which he owned,—that, only, over which his power of disposal extended. Wherever, therefore, the testator does not give the whole property *specifically* but employs *general words* of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his intent will control. On the other hand, if the testator devises the property *specifically* by language indicating a specific gift of the property, an election becomes necessary. It seems now to be settled by the more recent English decisions, that when the owner of an undivided share devises or bequeaths the property by words of description and donation importing an intent to give the *entirety,* then a case of election is raised against the other co-owner who receives a benefit under the same will." (Ibid. sec. 489.) This text is fully supported by the decisions of this and other courts. (*Wilbanks* v. *Wilbanks,* 18 Ill. 17; *Woolley* v. *Schrader,* 116 id. 29; *Ditch* v. *Sennott,* 117 id. 362; *VanSchaack* v. *Leonard,* 164 id. 602; *Burns* v. *First Nat. Bank of Joliet,* 304 id. 292; *Cooley* v. *Houston,* 229 Pa. 495, 78 Atl. 1129.) The fact that the one-sixth interest which belonged to the Gentry heirs does not pass under the will does not change the rule. The rule was applied in *Norris* v. *Downing,* 196 Ill. 91, where that situation existed. Notwithstanding this outstanding interest, Cora Baker accepted the benefits of the will, and she cannot at the same time reject its burdens. If she had elected to reject the gift made to her by her father

under his will she had that right. In that event, however, she would have been required to compensate Carrie Litton, so that the property received by her would have been equivalent to that devised to her by the testator.

The decree of the chancellor is in accordance with the well settled law of this country, and it is therefore affirmed.

*Decree affirmed.*