In the Matter of the Estate of Julia E. Downing, Deceased.
Claim of Helen F. Downing, Appellee. Appeal of Harris Trust and Savings Bank and Egbert H. Gold, Executors, Appellants.

Gen. No. 29,203.

1. ESTATES OF DECEDENTS—*chancery powers of probate court in passing on claims against estates.* In passing upon claims against an estate the probate court may exercise equitable powers and may determine that a claimant had, by accepting payments under a will, elected to abide by the will.

2. SAVING QUESTIONS FOR REVIEW—*motion for directed verdict against claimant against estate as raising question of election under will.* On trial of a claim against an estate, a motion by counsel for the executors to direct a verdict in their favor on the ground that claimant had elected to accept benefits under the will and was therefore barred from any claim against property otherwise disposed of by the will raised the question of election and that question is before the Appellate Court.

3. WILLS—*intention of testator to be ascertained from will alone.* The intention of a testator must be gathered from the will itself and a will cannot be reformed to conform to an intention of the testator not expressed therein however clear that intention may appear from proof of extrinsic facts.

Estate of Julia E. Downing, 236 Ill. App. 168.

4. WILLS—*when creditor of estate not required to elect between debt and bequest under will.* Where claimant and her two sisters relinquished by assignment to their mother their interest in their deceased brother's estate, with the understanding that the mother should have the income for life and upon her death would leave all of such estate to the daughters, claimant, after the death of the mother, stands in the relation of creditor to the estate and she was under no legal obligation to elect whether she would take under the will or would enforce her claim against the estate but could do both.

5. WILLS—*when devise to creditor not intended as payment of debt.* Where a daughter had a claim against the estate of her mother for her interest in a brother's estate which was assigned by her and her sisters to the mother, where the mother's will gave the executors power to settle and compound all claims against the estate and the devise made by the will to claimant was of a different nature and extent from the claim of claimant, being the income from a part of the mother's estate, such devise will not be held to have been intended as a payment of the debt to claimant.

6. ESTATES OF DECEDENTS—*when bequest to creditor not to be set off against debt.* A claim against the estate of claimant's mother for claimant's share in her brother's estate, which was assigned to the mother with the understanding that it should be devised to claimant by the mother's will, was not a claim for damages for breach of contract by the mother in the making of her will but for a debt, and the amount devised by the will to claimant could not be set off against the amount of the claim.

MATCHETT, J., dissenting.

Appeal by defendants from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1924. Affirmed. Opinion filed February 9, 1925. Rehearing denied and opinion modified February 24, 1925.

CHAPMAN, CUTLER & PARKER, for appellants; JOHN P. BARNES, PERRY M. CHADWICK and WILLIAM H. RADE-BAUGH, of counsel.

JOSEPH P. MAHONEY and HUGH O'NEILL, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the Harris Trust and Savings Bank and Egbert H. Gold, executors, from a judgment in favor of Helen F. Downing, on an appeal from the probate court to the circuit court in the matter of a claim of Helen F. Downing against the estate of her mother, Julia E. Downing, deceased.

The claim of Helen F. Downing, as originally filed in the probate court, was for fourteen forty-fifths of the estate left by Thomas F. Downing, the deceased brother of the claimant and the son of Julia E. Downing, deceased. The probate court allowed the claim for the sum of $8,000. The facts stated in the claim as filed in the probate court are as follows:

"At the time of the death of said Thomas F. Downing he left him surviving as his only heirs at law and next of kin Julia E. Downing, his mother, and Henrietta Maisel, Mabel Downing and Helen F. Downing (this claimant), his sisters; that this claimant, together with her said two sisters, at the request of their said mother, Julia E. Downing, assigned and transferred to her shortly after the death of said Thomas F. Downing, deceased, all of their right, title and interest in and to the estate of said Thomas F. Downing, deceased, on condition and in consideration of the agreement of said Julia E. Downing to return to them the said distributive shares in said Thomas F. Downing estate of each of the sisters of said deceased or the equivalent thereof upon the death of said Julia E. Downing; that the distributive share of this claimant in the estate of said Thomas F. Downing under the intestate laws of the State of Illinois amounted to one-fifth thereof; that after said assignments were made to said Julia E. Downing by this claimant and her said two sisters, said Mabel Downing, one of the claimant's said sisters, died intestate, by reason whereof this claimant became entitled to one-fourth of said Mabel F. Downing's one-fifth interest in the estate of Thomas F. Downing, deceased; that thereafter said Julia E. Downing, this claimant's said mother, died testate and failed to pro-

vide that the distributive share of this claimant in
the estate of said Thomas F. Downing or that the dis-
tributive share of this claimant in the interest of said
Mabel Downing in the estate of said Thomas F.
Downing, deceased, be given to this claimant, but on
the contrary, said Julia E. Downing in and by her last
will and testament now on file in this court in this
estate, creates a trust estate and only a portion of the
income thereof is directed to be paid to this claimant;
that the sum total of said one-fifth interest of claim-
ant in the estate of said Thomas F. Downing and this
claimant's one-fourth interest in the distributive share
of said Mabel Downing in the estate of said Thomas
F. Downing aggregate said fourteen forty-fifths in-
terest of this claimant in the estate of said Thomas
F. Downing, deceased, for which this claimant hereby
makes claim, which fourteen forty-fifths interest in
the estate of said Thomas F. Downing amounts to
about $12,500, the estate of said Thomas F. Downing
having amounted to approximately $40,000.''

The trial in the circuit court on the appeal from the
probate court was before a jury. The jury were in-
structed that ''if the claimant is entitled to recover
she is entitled to recover only one-fifth of the value
of the estate of Thomas F. Downing at the date of
his death.'' By stipulation of the parties for the pur-
poses of the trial the net value of the estate of Thomas
F. Downing, deceased, on December 19, 1910, was
fixed at $32,000; the date December 19, 1910, being
the one on which the claimant, Helen F. Downing, as-
signed her interest in the estate of Thomas F. Down-
ing to her mother, Julia E. Downing. The jury re-
turned a verdict in favor of the claimant, Helen F.
Downing, in the sum of $6,400.

The evidence shows in substance that after the
death of her son, Thomas F. Downing, Mrs. Julia E.
Downing made a will; that before making the will
she had a conversation with the claimant, Helen F.
Downing, and her two other daughters, Mabel Down-
ing and a married daughter, Henrietta Maisel, in

which, according to the testimony of Henrietta Maisel, she, Julia E. Downing, stated in substance that she wanted the income for her life from the estate of Thomas F. Downing; that after her death she would leave all of the estate to the three daughters; that the three daughters "would have to sign an assignment so the will could be made"; that the three daughters were to assign their "rights to her as long as she lived"; that "the estate was to remain for two years and then each daughter was to receive half of the estate and the remaining half to remain in the estate for three additional years, and then we were to receive the other half."

Margaret Masterson, first cousin of Julia E. Downing, and Anna O'Shea, also a first cousin of Julia E. Downing, testified in substance that Julia E. Downing had told them that she wanted the estate of Thomas F. Downing left to her while she lived and at her death she wanted the estate divided among her three daughters.

The evidence shows further that the three daughters went with the executor, Egbert H. Gold, to the offices of the executor, the Harris Trust & Savings Bank, and each executed an assignment of her interest in the estate of Thomas F. Downing to her mother. The assignment executed by the claimant, Helen F. Downing, which is identical with the other two assignments, is as follows:

"I, the undersigned, Helen Downing, of Chicago, Illinois, a sister and one of the heirs at law and next of kin of Thomas F. Downing, deceased, late of the County of Cook, and State of Illinois, for and in consideration of the love and affection which I bear my mother, and in consideration of the execution of an assignment similar to this by Mabel Downing and Henrietta Maisel (formerly Henrietta Downing), my sisters, do hereby assign, transfer and set over to my mother, Julia E. Downing, all my right, title and interest in and to the estate of said Thomas F. Down-

ing, deceased, and I do hereby authorize and direct Harris Trust and Savings Bank, administrator of the estate of said deceased, to transfer and deliver to the said Julia E. Downing all my distributive share in and of the estate of said deceased, and each and every part thereof, and I do hereby authorize the said Julia E. Downing to make, execute and deliver all necessary and proper receipts, discharges and other writings in respect of my distributive share of said estate.

Witness my hand and seal this nineteenth day of December, 1910.

Helen Downing (SEAL).''

After the execution of the assignments by the three daughters, Julia E. Downing executed a will, in which she made bequests to the three daughters as follows:

''(c) To pay the net income from said trust estate as it shall from time to time exist in convenient installments and in equal parts to my daughters, Henrietta Maisel, Helen Downing and Mabel Downing, or the survivor or survivors of them, provided that the issue of any deceased daughter shall receive the parent's share.

''(d) Upon the expiration of two years after my death to divide the said trust estate into three equal parts and to distribute one of such equal parts equally among my said daughters, or their survivor or survivors, provided that the issue of any deceased daughter shall take the parent's share.

''(e) Upon the expiration of five years after my death, to distribute the entire trust estate, as it shall then exist, equally among my said daughters, or their survivor or survivors provided that the issue of any deceased daughter shall take the parent's share.''

Margaret Masterson testified that at the request of Julia E. Downing she read this will aloud in the presence of Mabel Downing, Anna O'Shea and Julia E. Downing. This testimony of Margaret Masterson is corroborated by the testimony of Anna O'Shea.

Later Julia E. Downing executed a second will revoking the former will. Prior to the execution of the second will Mabel Downing had died.

The pertinent parts of the second will, which is the will involved in the case at bar, are as follows:

"I give and bequeath to my daughters, Henrietta Maisel and Helen Downing, or the survivor of them, all my household goods and chattels, wearing apparel, personal effects, jewelry, books, paintings and bric-a-brac owned by me at the time of my death, to be divided by them equally between them.

"I give and bequeath to my elder daughter me surviving the sum of Five Hundred Dollars ($500) in trust to be expended by her for the saying of masses for the repose of my soul and the souls of my deceased husband, Thomas D. Downing, my deceased son, William E. Downing, my deceased son, Henry D. Downing, my deceased son, Thomas F. Downing, and my deceased daughter, Mabel Downing, in such Roman Catholic Church or Churches as she may select.

"I give, devise and bequeath all the rest, residue and remainder of my estate of which I may die seized or possessed, real, personal and mixed, of whatsoever character and wheresoever situate, to Harris Trust and Savings Bank, a corporation of the State of Illinois, doing business in the City of Chicago, in said State, its successor or successors, and its or their assigns.

"To have and to hold upon the following trusts, that is to say:     *     *     *

"Paragraph (c)   To divide said trust estate into two equal parts; the net income of one of such equal parts to be paid to my daughter, Henrietta Maisel, so long as she shall live; the net income of the other of such equal parts to be paid to my daughter, Helen Downing, so long as she shall live.   In case of the death of either of my said daughters, leaving no issue her surviving, the part of such deceased daughter shall be added to the part of the survivor of them, and the entire net income of said trust estate paid to such surviving daughter.

"Paragraph (d)   Upon the death of either of my said daughters, leaving issue her surviving, to pay

over and deliver to her issue then surviving, *per
stirpes* and not per capita, the principal of one of the
two equal parts mentioned in paragraph (c) hereof.
Provided, however, that if at the time of such distri-
bution, any beneficiary entitled to take under this
paragraph (d) shall not have attained the age of
twenty-one (21) years, the share of such beneficiary
shall be retained by said Trustee and the income only
paid to such beneficiary until he or she shall attain
such age, whereupon the principal of the share so re-
tained shall be paid over; provided, however, that in
no case shall the share of any beneficiary entitled to
take hereunder be retained by said Trustee for a pe-
riod of more than twenty-one (21) years after the
death of my last surviving daughter, but on the last
day of the twenty-first year after the death of such
last surviving daughter of mine, said Trustee shall
pay over and deliver to the beneficiaries entitled there-
to any share or shares of said trust fund which may
have been retained by said Trustee under the pro-
visions of this Paragraph (d).

"In case of the death, without issue, of any child
of such deceased daughter of mine before attaining
the age at which such child shall be entitled to re-
ceive his or her respective share of the trust estate,
the share of such deceased child shall be added to the
share or shares of the then surviving children, and
the then surviving issue of any then deceased child,
of such deceased daughter of mine, *per stirpes* and
not per capita.

"In case of the death, without issue, of all the chil-
dren of any such deceased daughter of mine before
the vesting of their respective shares, the share or
shares of such deceased child or children shall be
added to and become a part of the remainder of the
trust estate herein created, upon the same trusts and
conditions as are herein imposed with respect thereto.

"In the event of the total failure of the benefici-
aries to take under this Article III at any time, I
direct that my said trust estate shall, upon the hap-
pening of such failure, be divided between and among
the same persons and in the same proportions as

would have been by the intestate laws of Illinois required with respect to my personal property, had I on the date of such failure died intestate, unmarried and without issue.

"No part of the trust estate herein provided for shall become vested until such time as the beneficiary or beneficiaries hereunder shall become entitled to the actual possession thereof.   *   *   *

"The bequests, legacies and annuities in this will made or given shall be paid to the respective beneficiaries in person, and then only upon their respective receipts, and shall not be grantable, transferable or otherwise assignable, in whole or in part, by the voluntary or involuntary acts of the respective beneficiaries or by operation of law, and shall not be liable or taken for any obligation of the respective beneficiaries.   *   *   *

"I hereby nominate and appoint said Harris Trust and Savings Bank and Egbert H. Gold of Chicago, Illinois, (or in the event of his death, resignation or refusal to act, Edward A. Schreiber, of Chicago, Illinois,) Executors of this my last will and testament, and I give unto such Executors full power and authority to sell the whole or any part of my said estate, real, personal and mixed, for such prices, on such terms and to such parties as my Executors shall deem meet; to settle and compound any and all claims, either in favor of or against my estate, upon such terms as to them may seem fit, and for the purposes aforesaid, to execute and deliver all necessary and proper conveyances and to give full receipts and discharges."

The evidence shows that at the time of the trial in the circuit court the claimant, Helen F. Downing, had received and receipted for remittances from the executor, the Harris Trust and Savings Bank, in the aggregate sum of $7,824.40 as her share of the net income under the will of Julia E. Downing.

No objection is raised on the present appeal by either counsel for the claimant or counsel for the executors as to the competency of any of the witnesses

or as to the admissibility of any of the evidence.

The only objection that is urged by counsel for the executors in regard to the evidence is that on the undisputed evidence the trial court committed reversible error in denying the motion made on behalf of the executors to direct a verdict in favor of the executors.

The principal contentions of counsel for the executors are substantially as follows: That the will of Julia E. Downing bequeathed "to the claimant property" which Julia E. Downing "could have withheld" from the claimant; that the will also "operates upon and makes a disposition of the very property" which the claimant "now seeks to recover by the filing of her claim"; that in such a situation the claimant was compelled by law to elect whether she would take under the will and abide by all of its terms, or whether she would enforce her claim against the estate of Julia E. Downing; that by accepting the remittances aggregating $7,824.40 from the executor, the Harris Trust and Savings Bank, as her share of the net income under the will, the claimant has elected to take under the will and is estopped from enforcing her claim against the estate of Julia E. Downing.

Counsel for the claimant maintain that the doctrine of election is strictly an equitable rule which the probate court is without power to exercise, and that, therefore, the question of election cannot be considered.

In the case of *Wilbanks v. Wilbanks*, 18 Ill. 17, in a dictum the court said (p. 20) that the rule of election "has been held to be the rule at law as well as in equity."

Story says, "whether any such rule of election is recognized at law has been greatly doubted; although in cases working by way of estoppel there may be a rule sometimes approaching nearly to it." 3 Story Eq. Juris. (14th ed.), sec. 1456, p. 117.

But even though the rule of election may be an

equitable rule and not a rule at law, we are of the opinion that in the settlement and allowance of the claim in question the probate court had the power to apply the rule.

The law is well settled that in passing upon claims against an estate, the probate court may exercise equitable powers. *Trego v. Cunningham's Estate,* 267 Ill. 367, 374; *Chapman v. American Surety Co.,* 261 Ill. 594, 601; *Thomson v. Black,* 200 Ill. 465, 468; *Chicago Title & Trust Co. v. McGlew,* 193 Ill. 457, 462; *Dixon v. Buell,* 21 Ill. 203, 204; *Moore v. Rogers,* 19 Ill. 347, 348.

In the case of *Trego v. Cunningham's Estate, supra,* in holding that the probate court has equitable powers in regard to claims, the court said (pp. 373, 374):

"The contract implied by law when one becomes a surety is that he engages to contribute his proportion according to the number of sureties, without reference to the solvency or insolvency of either of his co-sureties, but a court of equity, applying the fundamental rule that equality is equity, will apportion the loss among the solvent sureties. * * * The claimant alleged the insolvency of the principal maker and of the sureties C. S. Crary, W. W. Todd and John L. Hamilton, and asked for contribution of one-third of the amounts of the notes, with interest from the time of payment. That was an appeal to the equitable powers of the probate court, and that court, although without general chancery jurisdiction, has equitable jurisdiction in the settlement and allowance of claims. To avoid the delay, expense and embarrassment in the settlement of estates by requiring a resort, in the first place, to a court of equity, it will proceed in a case of an equitable character as though a bill in chancery has been filed, and will hear the evidence, investigate the claim and apply equitable rules in determining the judgment."

Counsel for the claimant further contend that the question of election was not raised on the trial in the circuit court, and that it cannot be urged for the first

time on this appeal. The question of election was specifically raised in the circuit court by the motion of counsel for the executors to direct a verdict in favor of the executors on the ground that the claimant had elected to accept benefits under the will, and was therefore barred from any claim against property otherwise disposed of by the will.

If the question of the right of the claimant to recover her claim against the estate of her mother, Julia E. Downing, and also to accept the bequest under her mother's will, should be considered from the aspect of the customary standards of justice, we are of the opinion that in view of the generosity and filial affection shown by the claimant in relinquishing her interest to her brother's estate to her mother, the claimant would be entitled to recover her claim to the amount relinquished and also to accept her bequest. If it is clear, however, that the claimant's mother did not intend by her will that the claimant should receive both the claim and the bequest, the claimant would be forced to make an election.

The ultimate question to be determined is the intention of the claimant's mother, Julia E. Downing. All rules of construction yield to the intention of a testator; and when the intention is ascertained the intention will prevail over any rules of construction unless prohibited by law. *Himmel v. Himmel,* 294 Ill. 557, 560. In Illinois the rule is explicit that the intention must be gathered from the will itself. *Baker v. Litton,* 311 Ill. 453, 456; *Himmel v. Himmel, supra* (p. 560); *Rodisch v. Moore,* 257 Ill. 615, 622.

Extrinsic evidence is never admissible for the purpose of varying the intent of the testator, as expressed in the will, in the absence of ambiguity arising in the language of the will itself. *Tomlin v. Laws,* 301 Ill. 616, 619, 620. In ascertaining the intention of the testator the whole scope of the will is to be considered and every provision given due weight to ascertain the

intention of the testator in the light of the facts and
circumstances surrounding him, his family and prop-
erty at the time of making the will. *Himmel v. Him-
mel, supra* (p. 560). But the intention must be
gathered from the will itself. *Baker v. Litton, supra*
(p. 456). A will cannot be reformed to conform to an
intention of the testator not expressed in the will it-
self, however clear that intention may appear from
proof of extrinsic facts. *Rodisch v. Moore, supra*
(pp. 615, 622, 623); *Graves v. Rose,* 246 Ill. 76, 79.
In the case of *Graves v. Rose, supra,* the court said
(p. 79): "If that were not so, all wills would be
subject to proof of mistake and of a different inten-
tion from that expressed, so that, in fact, property
would pass without a will in writing, which the law
declares shall not pass except by a written will." To
the same effect are the cases of *Rodisch v. Moore,
supra* (p. 623); *McKie v. Collinson,* 292 Ill. 458, 461.
No principle connected with the law of wills is more
firmly established or more familiar in its application
than this. *Graves v. Rose, supra* (p. 86). Following
the established rules of construction, it was held in
the case of *McKie v. Collinson, supra* (p. 461), that
"the intention to be sought for in the construction of
a will is not that which existed in the mind of the
testator but that which is expressed by the language
of the will."

Let us consider the contention of counsel for the
executors in the light of the principles announced in
the cases above cited. According to the contention
of counsel for the executors, the will of Julia E.
Downing bequeaths to the claimant property which
Julia E. Downing "could have withheld," and also
"operates upon and makes a disposition of the very
property" which the claimant "now seeks to recover
by the filing of her claim"; and that in such a situa-
tion the claimant was compelled to elect whether she
would take under the will or whether she would en-

force her claim against the estate.   The contention of counsel for the executors is correct if it appears from the will that Julia E. Downing devised property which she could have withheld from the claimant and also made a disposition of property which the claimant now seeks to recover.   *Wilbanks v. Wilbanks, supra; Carper v. Crowl*, 149 Ill. 465, 474; *Bell v. Nye*, 255 Ill. 283, 285, 286.   The claimant is not contending that Julia E. Downing was disposing of any property belonging to the claimant.   The claim of the claimant is merely a debt against the estate of Julia E. Downing.   Furthermore, there is nothing in the will itself that would indicate that Julia E. Downing was disposing of property belonging to the claimant.   In making the devise of household goods and chattels, etc., and the devise of the $500 for the saying of masses, it is obvious from the nature of the devises that Julia E. Downing was not disposing of property belonging to the claimant.   In the devise of the other property, the property is described generally as "all the rest, residue and remainder of my estate of which I may die seized or possessed, real, personal and mixed of whatsoever character and wheresoever situate."   From this devise it does not appear that Julia E. Downing was disposing of property which the claimant now seeks to recover.   The devise does not purport to dispose of any specific property.

The rule is well established that prima facie a testator is presumed to have intended to bequeath that alone, which he owned; and that where there is a general devise of property, such as "all of my real estate in A," or "all of my estate, real and personal," election cannot ordinarily arise, since there is an interest belonging to the testator to which the disposing language can apply.   3 Story's Eq. Jur. (14th ed.), sec. 1463, p. 125; 1 Pomeroy's Eq. Jur. (4th ed.), sec. 489, pp. 926, 927; *Baker v. Litton*, 311 Ill. 453, 457; *Sherman v. Lewis*, 44 Minn. 107, 109; *Penn v. Guggenheimer*, 76 Va. 839; *McDonald v. Shaw*, 92 Ark. 15, 21.

Counsel for the executors assert that the language of the court in the case of *Baker v. Litton, supra* (p. 457), to the effect that where a testator employs general words of description, such as "all my lands," no cause for election arises, is a dictum. The language in the opinion is quoted from Pomeroy's Equity Jurisprudence, and the court said that the text of Pomeroy "is fully supported by the decisions of this and other courts." The expression of the court, although it may not have been essential to the decision, was intimately connected with the precise question involved and was a deliberate opinion of the court. The language was not a mere *obiter dictum* in the sense that it was the personal opinion of the writer of the opinion; it was in any event a judicial dictum. *Rhoads v. Chicago & A. R. Co.*, 227 Ill. 328, 337; *People v. Read*, 233 Ill. 351, 354.

In the case of *Cameron v. Parish*, 155 Ind. 329, the court quoted with approval from Pomeroy to the effect (p. 339) that the "intention to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation."

In the case of *Gray v. Williams*, 130 N. C. 53, the court said (p. 55): "Before a donee can be put to an election, his own property which is professed to be conveyed must be, as to its identification, described in the instrument itself with sufficient and legal certainty as that the donee may know his own property from that description."

It is also the rule that under a general devise of property parol testimony is inadmissible to show, for the purpose of putting the devisee to an election, that part of the property was owned by the devisee.

*McDonald v. Shaw, supra; Gray v. Williams, supra* (p. 55); *Young's Adm'r v. McKinnie's Adm'r,* 5 Fla. 542, 551; 1 Pomeroy's Eq. Jur. (4th ed.), sec. 473, p. 899.

In the case at bar there is parol evidence in regard to the assignment, by the claimant and her two sisters, of their shares in the estate of Thomas F. Downing, to their mother. Although the evidence was not restricted to any specific purpose, it could only be considered for "legitimate purposes." *Diversy v. Kellogg,* 44 Ill. 114, 121; *Cochran v. Cochran,* 277 Ill. 244, 254. And according to the authorities it is not a legitimate purpose to show by evidence extrinsic to the will that part of the property devised was owned by the devisee, in order to put the devisee to an election. However, we are of the opinion that even if the evidence in question should be considered in connection with the question of election, such evidence would not indicate that Julia E. Downing was disposing of property which the claimant now seeks to recover. By the assignment Julia E. Downing acquired title to the claimant's interest in the estate of the claimant's brother. The claimant is not claiming ownership of her share in her brother's estate, which share she assigned to her mother. The claim of the claimant asks for a return of that share "or the equivalent thereof." The claimant has no legal claim to that specific share. She relinquished her title to it by the assignment. After the assignment, by reason of the agreement between the claimant and her mother, the relation between the claimant and her mother was one of debtor and creditor. *In re Sherman,* 53 N. Y. Supp. 376, 380, 381. No action would lie, however, on this agreement until the death of her mother. *In re Sherman, supra* (p. 380). Now that the mother has died the claimant stands as a creditor of the estate. *In re Sherman, supra* (p. 381).

We are of the opinion that the will of Julia E.

Downing does not, as counsel for the executors contend, purport to devise to the claimant property which Julia E. Downing could have withheld, and does not purport to dispose of property which the claimant now seeks to recover by the filing of her claim; that therefore the claimant was under no legal obligation to elect whether she would take under the will or whether she would enforce her claim against the estate; that she could do both.

Counsel for the executors assert that the case of *Burns v. First Nat. Bank of Joliet*, 304 Ill. 292, is conclusive authority in support of their contention in regard to election. We do not agree with counsel. We think that the case at bar is materially different from the case of *Burns v. First Nat. Bank of Joliet*. The latter case was a suit in equity in which the complainant, who was a devisee under a will, prayed that an alleged oral agreement between the complainant and the testator be specifically performed by a conveyance to the complainant of property which had not been devised to the complainant, and which the complainant averred should have been devised to the complainant under the agreement. The court held that the complainant could not recover because of the fact that the complainant had elected to take under the will by accepting monthly payments under a devise to the complainant by the testator of $30 a month for life. The complainant was claiming the devise and at the same time suing on the theory that the testator had disposed of property which equitably belonged to the complainant. In such circumstances the complainant was under a legal duty to elect; and the court held that the complainant did elect. In the case at bar the claimant is not alleging that the will disposes of property equitably belonging to her, and is not asking by a bill for specific performance that such property be conveyed to her. She is merely asserting a claim as a creditor against the estate. The relation

between the complainant and the testator in the case of *Burns v. First Nat. Bank of Joliet* was not one of debtor and creditor. In the case at bar the relation between the claimant and the testator was one of debtor and creditor. In the case of *Burns v. First Nat. Bank of Joliet,* in respect of the question of debtor and creditor, the court said (p. 296):

"There is no question in this case of election by a creditor by accepting a legacy in satisfaction of a debt, since it is not claimed, and there is not the slightest evidence to prove, that the complainant was not paid the stipulated sum per month for her services or that McClester was indebted to her in any amount at his death."

In the case at bar the question whether the testator, Julia E. Downing, intended the devise to the claimant in satisfaction of the debt to the claimant, was not raised in the trial court. We are of the opinion, however, that Julia E. Downing did not intend the devise in satisfaction of the debt of the claimant. Subject to very numerous exceptions, the general rule is that a legacy to a creditor, which is equal to or greater than the debt, will be deemed to be in satisfaction of the debt. The rule is regarded with great disfavor, and the courts almost universally manifest a strong disinclination to enforce it. 40 Cyc., p. 1885; *Fetrow v. Krause,* 61 Ill. App. 238, 245. The cases generally recognize the existence of the rule; yet so numerous have become the exceptions that in comparatively few cases has the rule been applied. L. R. A. 1915B, p. 1158.

One of the well-established exceptions to the general rule is that where the testator has directed in his will that his debts be paid, no presumption arises that a legacy is given in satisfaction of a debt. 40 Cyc., p. 1885; L. R. A. 1915B, p. 1169; *Fetrow v. Krause, supra* (p. 246); *Mitchell v. Vest,* 157 Iowa 336, 345, 346; *Deichman v. Arndt,* 49 N. J. Eq. 106, 108; *Lisle v. Tribble,* 92 Ky. 304, 308; *Bowen v. Bowen,* 34 Ohio

St. 164, 165; *Strong v. Williams,* 12 Mass. 391, 394; *Boughton v. Flint,* 74 N. Y. 476, 482; *Reynolds v. Robinson,* 82 N. Y. 103, 108; *Gilliam v. Brown,* 43 Miss. 641, 654.

It is also a well-settled exception to the rule that where the devise is different in nature and extent, it will not be presumed that the testator intended to devise in satisfaction of a debt.    40 Cyc., p. 1887; L. R. A. 1915B, p. 1164; *Fetrow v. Krause, supra* (p. 246); *Mitchell v. Vest, supra* (p. 346); *Lisle v. Tribble, supra* (p. 308); *Russell v. Minton,* 42 N. J. Eq. 123, 126; *Crouch v. Davis' Ex'r,* 64 Va. (23 Gratt.) 62, 86, 87.

In the case at bar the will of Julia E. Downing gives the executors the power "to settle and compound any and all claims, either in favor of or against my estate, upon such terms as to them may seem fit"; and the devise to the claimant is of a different nature and extent from the claim of the claimant.    The devise is not a gift outright of a specific amount, but is only the income from one-half of the estate, together with a contingent bequest.

We are of the opinion that Julia E. Downing did not intend the devise as a payment of the debt to the claimant.

Counsel for the executors further contend as follows: that "if the present claim be regarded as one for breach of contract to make a will of a particular sort, claimant's measure of damages is the difference between the value of the disposition promised and that actually made"; that "under her claim, the maximum value of disposition promised claimant was $6,400"; that, "under the disposition which Julia E. Downing made for claimant's benefit, she has received $7,824.40 or $1,424.40 more than the maximum value of the disposition promised"; that "in refusing to instruct the jury as to this diminution of claimant's damages, the trial court committed error."

We do not think the claim of the claimant is for damages for a breach of contract, but is, as we have previously stated, a debt. No damages are claimed. In the language of the opinion in the case of *Pulliam v. Pencenneau*, 23 Ill. 93, 94, the claim is "all debt." The amount of the claim is fixed by reference to the amount of the share of the claimant in the estate of Thomas F. Downing, which share was assigned by the claimant to Julia E. Downing.

For the reasons stated the judgment of the circuit court is affirmed.

*Affirmed.*

McSURELY, P. J., concurs.

MATCHETT, J., dissents.