## Wytheville.

### ALLISON v. ALLISON'S EXECUTORS AND OTHERS.

JUNE 20, 1901.

1. ELECTION—*Inconsistent Rights or Claims.*—Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both.
2. ELECTION—*Husband and Wife—Bond for Wife's Benefit—Substitution of Other Securities—Gifts—Burden of Proof.*—Where a husband, at the time of marriage, executes his bond to a trustee for the benefit of his intended wife, reserving the right to substitute other property in lieu of the bond, in whole or in part, provided she first consents thereto in writing, and at a fair value to be agreed on between her and him, and to be endorsed as a credit on the bond, the subsequent purchase by him of a small amount of stock, and the transfer thereof to her trustee, will not, in the absence of such an endorsement, and of all evidence whatever of such an intention, be deemed a payment on the bond. The burden of showing such an intention is on the party asserting it.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced July 14, 1899, in a suit in chancery, wherein the executors of James W. Allison, appellees, were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Christian & Christian,* for the appellant.

*Leake & Carter, Meredith & Cocke,* and *J. Preston Carson,* for the appellees.

KEITH, P., delivered the opinion of the court.

James W. Allison, in contemplation of a marriage then about to take place between himself and Minnie C. Jones, executed and delivered to William H. Allison, as trustee for his intended wife, his bond for $50,000, with Warner Moore as surety, dated December 4, 1890, to be held subject to the uses and trusts declared in a certain deed of marriage settlement of even date with said bond.

James W. Allison died in March, 1898, leaving as his executors William H. Allison and Warner Moore, who instituted a suit in the Chancery Court of the city of Richmond, one of the objects of which was to ascertain the amount due on the $50,000 bond. The obligor in that bond, during his life time, made payments on account of interest to his wife, and, in addidtion thereto, purchased dividend obligations of the Richmond, Fredericksburg and Potomac Railroad Company, and caused them to be transferred on the books of that company in the name of William H. Allison, trustee for Mrs. M. C. Allison, and delivered the certificates of stock to William H. Allison. One of these certificates was purchased on October 6, 1894, and is of the face value of $1,000; the other was purchased on February 4, 1895, and is of the face value of $2,000. These two transactions gave rise to the only controversy involved in this appeal.

On the part of the executors it was claimed in the Chancery Court that these securities, when delivered by Mr. Allison to his brother, as trustee for his wife, were intended as payments upon his bond, and that the widow and obligee would be required to elect to take them as payments and credit them upon the bond for her benefit, or that she could not take them at all, but they would constitute a part of the estate of James W. Allison in the hands of his executors to be administered.

On behalf of Mrs. Allison it was contended that the purchase, transfer, and delivery of the certificates of stock to her trustee,

unexplained and uncontrolled by other circumstances, imported
a gift, and that there was no proof in the case showing that
these securities were intended as a payment on the bond.

The Chancery Court adopted the view presented by the execu-
tors, and its decree upon that point is as follows:

" The investment made by the late James W. Allison in the
purchase of $3,000 face value of Richmond, Fredericksburg and
Potomac Railroad Company's dividend obligations, registered
in the name of 'William H. Allison, trustee for Mrs. Minnie.
Clemens Allison,' was intended as a part payment on said $50,000
bond, and the said Minnie C. Allison must elect whether she will
accept same or not. If she elect to receive the same, then the
executors will credit the cost price of said dividend obligations
on said $50,000 bond, as of the respective dates of the purchases
thereof, and W. H. Allison, trustee, will transfer the certificates
therefor to her, and said executors shall pay over to her all
dividends thereon, not already paid to her, from the time of the
purchase thereof to the time of said transfer, with interest from
the time such dividends were received. Should the said Minnie
C. Allison elect not to receive said dividend obligations, as a
credit on said bond, then said William H. Allison, trustee, will
transfer the certificates to the executors of James W. Allison to
be accounted for as part of his estate."

The facts bearing upon the issue to be decided, in addition to
those already stated, are as follows:

It is recited in the bond for $50,000 that it is made subject
to the provisions and reservations contained in the ante-nuptial
deed of settlement, and the provision of that settlement material
to the present enquiry is "that said trustee shall hold said bond
subject to the right of the said James W. Allison, hereby ex-
pressly reserved to him, to substitute in place of said bond, or of
the sum of money secured hereby wholly, or in part, other

property, real or personal; provided, that the said Minnie Clemens Jones shall first give her consent thereto in writing, and at a fair value to be agreed upon by him and her, such value when so agreed upon to be endorsed as a credit on said bond at the time of such substitution, or in full payment thereof, if the same be equal to the balance then due on said bond."

It appears from one of the exhibits filed that James W. Allison paid to Mrs. Allison in person $200 per month on account of interest upon that bond. It also appears that he purchased dividend obligations of the Virginia Trust Company, and paid the dividends to his wife directly. There is a written admission on the part of counsel that certain other payments, amounting to $1,102.30, called "extra payments," were not made on account of either the principal or interest on the $50,000 bond. On November 29, 1892, a paper was executed by James W. Allison, which was afterwards admitted to probate as his will, which is in part as follows:

" To provide against my sudden death, causing injustice to my dear wife, Minnie Clemens Allison, I hereby direct my executor, or executors, to invest one hundred thousand dollars in good income paying real estate, or in some safe stock or bonds, preferably real estate, to be held by my said executor and my brother-in-law, Clemens Jones, as joint trustees, for her sole and separate use and benefit during her natural life, and at her death to go to her child or children, if there should be any by me, and if there should be no child or children by me then to go to my legal heirs. I intend this legacy of one hundred thousand dollars for life to be in addition to the sum of fifty thousand dollars settled upon my said wife, Minnie Clemens Allison, by an ante-nuptial agreement between her as Minnie Clemens Jones and myself, executed at Fairfield, Conn., on or about December 10, 1890."

At the time the dividend obligations were delivered to William H. Allison, as trustee, there was no declaration of trust, verbal or written.

"Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both." 2 Sto. Eq. Jur., sec. 1075; Bouvier's Law Dic. (Ed. 1897), 646.

The facts before us do not present a case of election coming within this accepted definition. There is no question before us of alternative and inconsistent rights or claims. James W. Allison bound himself by his bond to pay to William H. Allison, trustee for his wife, a certain sum of money. By the terms of a contemporaneous deed of settlement, to which the bond is made subject, he reserved to himself the right to substitute in place of said bond, other property, real or personal, provided that "said Minnie Clemens Jones shall first give her consent thereto in writing, and at a fair value to be agreed upon by him and her, such value when agreed upon to be endorsed as a credit on said bond, at the time of such substitution." He purchased securities amounting to $3,000. He caused them to be transferred upon the books of the company in the name of his brother as his wife's trustee, and delivered the certificates to the trustee without any contemporaneous direction with respect to them. By that act he parted with all interest in and dominion over the certificates. They were by that act vested in his brother as trustee for his wife. They do not constitute in law a payment upon that bond, and if to be treated as a payment, it must be either by force of the provision of the deed just recited, or because there is some rule or principle of law or equity which requires us to declare that property far less in amount than the obligation due by the husband to the wife, when transferred to her or a trustee for her benefit, without any declaration of purpose or intention, but with the record silent upon that subject, is to be treated as a satisfac-

tion in part of an established obligation. It is true that, by the paper writing admitted as his will, he bequeathed to trustees to the use of his wife for life, with remainder to her child or children, the sum of $100,000, which he expressly declares shall be in addition to the sum of $50,000 setted upon her by ante-nuptial agreement; and it is argued that if the dividend obligations in question had not been designed as a part satisfaction of the bond, a similar declaration would have been made. The will was made in 1892, and this legacy might have been deemed perhaps a satisfaction of the debt, and it was manifestly proper that he should guard against any such construction. It would seem from this circumstance that the testator was informed as to the equitable doctrine of election now invoked.

It appears that the semi-annual dividends upon the certificates of stock were collected by James W. Allison, and were not placed to the credit of the wife as was the case with the dividends of stock in the trust company.

The facts relied upon by the executors, to-wit: the payment by the husband of an arbitrary monthly sum to the wife instead of the stipulated interest; the passing to her credit of the dividends upon the trust stock; the appropriation to his own use of the dividends upon the certificates of railroad stock; the provision in the will by which the legacy is declared not to be in satisfaction of the debt, are not only inconclusive of his intention with respect to the disposition to be made of the certificates in question, but throw a very dim and unsatisfactory light upon it.

Mr. Allison was a man of large fortune, which had greatly increased after his marriage and the execution of the bond in suit. A son had been born to him, and he saw fit upon two occasions to invest $3,000 in railroad stock, a mere trifle as compared with his estate, and placed the certificates in the hands of his brother, in whose name, as trustee, they had been registered. He owed that brother as trustee for his wife $50,000 as principal, and a

balance of interest. The delivery of the stock did not operate as a payment, and could not operate as such except by the terms of the provision incorporated into the bond. It is not contended that that provision was observed. The consent of the wife was never asked or given in writing or otherwise. There was no agreement between them as to values, and, of course, no such agreement was endorsed as a credit upon the bond. He had the right to call upon her to accept or reject those certificates as a credit upon the bond at an agreed valuation, but that right he never exercised. He simply parted with his right of property in the certificates, transferred them to a trustee for her benefit, without any contemporaneous declaration of intention, and with nothing in this record by which that intention can be discovered.

The testator was a careful man of business. He left no room for doubt or question as to the legacy of $100,000, as to the "extra payments," as to the payments on account of interest, and as to the trust company dividends, but as to each and all of those items the accounts and memoranda which he kept conclusively establish his intention. The terms of his will indicate that he was advised as to the possible effect of a bequest to his wife, and he provided against any interpretation by which it might be treated as a payment upon his bond; but there is nothing in his accounts, in which are items of payment running through several years, nothing in any memorandum left by him, nothing in the way of verbal declaration to his wife or trustee which throws any light upon his intention with respect to the certificates of stocks. That transaction stands alone upon the naked fact of the purchase, transfer, and delivery to the trustee of stock registered upon the books of the company in the name of the trustee.

The burden was upon the executors to show that the bond due by their testator had been satisfied in whole or in part. It was for them to prove by satisfactory evidence that the certificates

of stock, when delivered by their testator to his wife's trustee, were intended by him in part satisfaction of his obligation. This has not been done to the satisfaction of this court.

The decree must be reversed and the cause remanded to be further proceeded with in accordance with this opinion.

*Reversed.*