# CHARLESTON.

WINNIE M. JACOBS, *Executrix, etc.,* v. FLORENCE WARD JACOBS, *Infant et al.*

(No. 5398)

Submitted October 28, 1925.  Decided January 13, 1926.

1. WILLS—*Will Held to Create Jointure for Widow and to Put Her to Election.*

   A will which gives to the widow a life estate in the entire real and personal property of the testator, with fee therein contingent upon the death of the daughter without issue before the death of the widow, and which nominates the widow as executrix without bond, with direction to her to sell a sufficient amount of the property, either real or personal, or both, within a reasonable time after testator's death, to discharge all the debts, and to execute to the purchasers proper deeds of conveyances, construed in the light of the circumstances surrounding the testator at the time of the will, creates a jointure for the widow and puts her to election. (p. 587).

   (Wills, 40 Cyc. pp. 1392, 1965, 1966.)

2. SAME—*Widow Put to Election Between Dower and Provision for Her in Will When Assertion of Dower Would Defeat, Even Partially, Any of Will's Provision.*

   A widow is put to her election between dower and a provision made for her in a will, when the assertion of dower on her part would defeat even partially any of the provisions of the will. (p. 591).

   (Wills, 40 Cyc. p. 1965.)

3. STATUTORY PROVISIONS—

   Section 6 of Chap. 65, Code 1923 preserves to the widow her right of dower when she has been lawfully deprived of

jointure, in so much of the lands whereof, but for said jointure, she would have been dowable, as is equal in value to that of which she has been deprived.   (p. 595).

(Dower, 19 C. J. § 148.)

4.   DOWER—*Prayer for General Relief in Petition for Assignment of Dower Held Broad Enough to Assert Claim for Dower Because of Failure of Jointure.*

A case where a petition for assignment of dower is held to be broad enough, under the prayer for general relief and in the light of the facts then developed, to assert a claim for dower because of failure in whole or in part of jointure. (p. 596).

(Dower, 19 C. J. § 266.)

5.   APPEAL AND ERROR—JUDGMENT—*If Merits are not Fully Presented so as to Enable Court to Decide Real Questions, Lower Court Should Refuse Decree; if Real Merits are not Fully Presented so as to Enable Court to Decide Real Questions Involved, Appellate Court Will Reverse Decree and Remand Cause.*

Where the real merits sought to be determined are not fully presented, either on account of defects in the pleadings or evidence, with such fullness as to enable the court to decide the real questions involved, the lower court should refuse to decree on the merits until such defects are remedied; and in a plain case the appellate court will for that reason alone reverse the decree and remand the cause for further proceedings.   (*Atkinson* v. *Sutton,* 23 W. Va. 197.) (p. 596).

(Appeal and Error, 4 C. J. §§ 3239, 3240: Judgments, 33 C. J. § 84.)

6.   APPEAL AND ERROR.

Point 1 of the syllabus of *Beard* v. *Arbuckle,* 19 W. Va. 145 (relating to appointment of receiver pending appeal) applied. (p. 598).

(Receivers, 34 Cyc. p. 49.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Marion County.

Petition by Winnie M. Jacobs, executrix of George M. Jacobs, deceased, for the assignment of dower, opposed by Florence Ward Jacobs, an infant, and others.   From a decree denying petitioner dower, and from a decree appointing a receiver of certain property, she appeals.

*Decree denying dower reversed; cause remanded.*

*Decree appointing receiver affirmed.*

*Victor H. Shaw, Wm. S. Haymond,* and *Ira E. Robinson,* for appellant.

*Meredith & Bell, Tusca Morris, Frank C. Haymond, M. W. Ogden* and *W. H. Conaway, George Henderson, Brooks S. Hutchinson, Trevy Nutter, A. J. Colburn,* and *Charles Powell,* for appellees.

LIVELY, PRESIDENT:

Winnie M. Jacobs appeals from a decree refusing to allow her dower in the estate of her deceased husband, Geo. M. Jacobs.

On April 15, 1914, George M. Jacobs died, testate, leaving one child, Florence, and his wife, Winnie M. Jacobs, surviving him. His personal estate was appraised at $55,033.34, and his real estate at $82,300. His will, dated December 24, 1912, gave to his mother a life estate in a house and lot at Worthington, and an annuity of $300.00 payable monthly. To his wife (appellant) he gave a life estate in all his property real and personal, subject to the life estate in the specific property willed the mother, and also subject to the maintenance, support and education of the daughter to whom all the property went as remainderman upon the ending of the wife's life estate. Should the daughter die without issue surviving her before the death of the wife, then the latter took all the estate in fee. The wife, Winnie M., was nominated as executrix without bond and was directed to sell a sufficient amount of the estate, either real or personal, or both, to pay the indebtedness, and to execute proper deeds therefor. The will was duly probated April 22, 1914. Winnie M. qualified as executrix, giving bond without surety, and took charge of the estate as such. In March, 1916, the executrix filed her bill making herself in her individual capacity a party defendant, together with her daughter and the various creditors, charging that the testator owed a large number of debts, most of which were evidenced by notes given to him and others by J. V. Thompson, and endorsed over to banks and other persons, and that the personal estate was insufficient to pay the same. The will was exhibited with the bill. No allegation is made therein

respecting the interest of defendant, Winnie M. Jacobs, in the estate. The prayer asked that the liabilities and assets be ascertained by a master commissioner, the personal estate be applied to the indebtedness as far as it would go, and for general relief.

Nothing seems to have been done with the case until 1919 when it was referred to a commissioner for the purpose of stating the usual account in such cases. The account was filed March 1, 1923, by which it appeared that the indebtedness then unpaid amounted to $192,428.87; that the real estate not disposed of by the executrix consisted of the Jacobs dwelling and lot valued at $25,000.00, and the Jacobs office building valued at $200,000.00 with a rental value of about $12,000; that the executrix had realized from sales of real estate $16,000, and from sales of personal estate $30,357.50, making a total of $46,357.50; and that she had paid out on the indebtedness the sum of $47,771.69, leaving a balance in her favor of $1,414.19 against the estate. The indebtedness paid consisted of funeral and medical expenses $1,531.30; taxes assessed in lifetime of testator $1,181.87; counsel fees to Harry Shaw $3,725.25; expenses for maintaining the Jacobs building in 1914, such as gas, electric, janitor and repair bills, $2,466.30; a deed of trust lien on the Jacobs building of $37,755.44; and joint indebtedness of testator with Arnett and Price, $1,111.53. The personal property owned by the testator at the time of his death was valued at $55,033.34, and the executrix had sold and realized therefrom the sum of $30,357.50, leaving personal property in her hands valued at $24,333.33. The report does not show what sums went into her hands, either as executrix or as tenant for life, from the rents, issues and profits of the estate. By decree of July 3, 1923, the commissioner's report was confirmed, and the executrix was directed to sell the remaining personal property valued at $24,333.33 and apply the proceeds to the payment of debts. The amount overpaid by the executrix on the debts, namely, $1,414.19, was first to be deducted from the proceeds of the personal estate to reimburse the executrix. The remaining real estate was decreed to be sold for payment of the debts as ascertained. On October 30, 1923, the home property of the testator was sold by the

commissioner to Winnie M. Jacobs for $22,000.00, and on December 24, 1923, the Jacobs office building was sold, M. L. Hutchinson being the purchaser at $151,000, the sales being made upon the condition that the properties were free of dower claim of the widow.

On December 12, 1924, Winnie M. Jacobs filed her petition in the case in open court asking for assignment of dower to her in the dwelling house and office building, either in kind or cash as she might elect. The creditors demurred to and answered her petition, charging that she is barred of dower by the statute of limitations; and is barred because she failed to renounce the will within one year from its probate, but, on the contrary, had accepted the will in lieu of dower and had realized therefrom in rents, issues and profits since the testator's death, about $120,000.00; and that she is barred of dower by the decree of July 3, 1923, confirming the report and directing sale, as an adjudication. She filed a special reply to the answer to her petition, in which she denied being barred of dower as set out in the answer, but admitted that she had taken possession of all the property and had collected the rents therefrom, which she avers were less than $12,000.00 per year. The creditors took depositions of tenants occupying the office building, showing that for many years they had paid specific sums for office rent therein. It appears from this evidence that she collected the rents up until December 1, 1920, as executrix, and after that date collected the rents as Winnie M. Jacobs. These depositions indicate that the rents amounted to about $1,000.00 per month. She has not undertaken to give any statement of the actual amount of rent collected, or the expense of maintenance of the buildings; but contents herself by saying in her special reply that the rents would not amount to $12,000.00 per year, and whether she collected little or much it cannot affect her claim for dower.

On February 4, 1925, dower was denied her by decree, and the sales were confirmed to the purchasers free of dower. From this decree denying her dower Mrs. Jacobs obtained this appeal.

The chancellor denied dower on the ground that the life estate (and in the event of the death of Florence, the daughter, before the wife, then the latter should take in fee) was intended by the testator in lieu of dower, and having failed to renounce the will within one year from the probate, she could take no more than was given her by the will, as provided by Sec. 11, Chap. 78, Code, which says: "When any provision for a wife is made in the husband's will, she may, within one year from the time of the admission of the will to probate, renounce such provision. . . . If such renunciation be made, or if no provision be made for her in the will, she shall have such share of her husband's real and personal estate as she would have had if he had died intestate, leaving children; otherwise she shall have no more thereof than is given her by the will." In denying dower on this ground, the chancellor in his opinion touched upon the other grounds raised by the creditors, namely, that the widow is barred of dower by the decree of July 3, 1923, adjudicating the principles of the cause, and directing sale of the property to pay the debts, under the doctrine of res adjudicata; and that she is barred of her claim of dower by the statute of limitations. The chancellor intimated that she was estopped by the final decree of July 3rd, but having decided that the provision of the will for her was in lieu of dower, and she had failed to renounce, he deemed it unnecessary to pass upon the questions of res adjudicata and the bar of the statute of limitations.

The creditors, appellees, rely upon the three grounds above interposed by them in the circuit court. Mrs. Jacob's counsel asseverate that the will does not say expressly that the life estate (and contingent fee estate) is to be in lieu of dower, and therefore she was not put to an election under the statute quoted, that the life estate and contingent fee estate were intended to be in addition to dower; that she is not estopped by the final decree of July 3, 1923, as a former adjudication of her dower right; nor is she barred by the ten-year statute of limitation, Sec. 1, Chap. 104, Code.

There is practically no dispute of fact; and the issue is clearly defined. Under the pleadings and facts, is appellant

entitled to dower in the real estate of which her husband died seized and possessed? Under the statute above quoted was she put to her election? The lower court answered this latter query in the affirmative.

To put the widow to her election the provision made for her in the will must be in lieu of her dower, made so by express terms, or by implication as strong as if made in express terms. The intention of the testator governs. *Douglas* v. *Feay*, 1 W. Va. 26; *Shuman* v. *Shuman*, 9 W. Va. 50. There are no express terms used in the will which made the provision for her in lieu of dower. It is not necessary that it be so expressed. It may be deducible from the various provisions of the will, and such facts as may throw light thereon. The disposition of the property is always a salient fact to be considered; for if the testamentary disposition be changed or disturbed by award of dower, it will be presumed that the provision for the widow was in lieu of dower. If both cannot stand unimpaired, one must fall. The doctrine is concisely stated by Judge EDMISTON in *Shuman* v. *Shuman, supra*, as follows: "It is a proposition applicable to all cases that a person who is entitled to any benefit under a will, or other instrument, must, if he claims that benefit, abandon every right or interest, the assertion of which would defeat, even partially any of the provisions of that instrument. And applying this to dower, the doctrine is, that if the testator has made such a disposition of his real estate, as that the assertion by the widow of her right to dower would prevent that disposition from taking effect as the testator intended, then she must elect to abandon either her dower or the benefit given by the will." If the provision be equal to or greater than dower, it is persuasive that it was intended to be in lieu of dower; and the situation of the testator, the property devised, the indebtedness, and all the surrounding circumstances likely to influence him in making the will should be considered in arriving at the intention. *Atkinson* v. *Sutton*, 23 W. Va. 197. Bearing in mind these clearly enunciated principles, we see from the will that not only a life estate in the real estate is given the widow but also the entire personal estate, with remainder to her in fee of both real and personal estate, in the

event that the daughter Florence should die without issue before the widow. A contingent interest indicates an intention on the part of the testator that it should be in lieu of dower almost as strongly as if the interest devised was a vested one. Story's Eq. Jurisprudence (14th ed.) Sections 1472 and 1473, page 132. If the widow takes under the will, she has a contingent inheritance in fee; if she repudiates the will and elects to take dower, the estate, in the event of the death of the daughter without issue before the death of the widow, would descend under the law of descents and distribution. The will directs that a sufficient amount of either personal or real property, or both, be sold by the executrix within a reasonable time after testator's decease, and that she should execute and deliver to the purchaser or purchasers of real estate *proper* deeds. Can it be questioned that these contemplated deeds to the real estate should not be free from dower? *Cooper* v. *Cooper,* 56 N. J. Eq. 48; *Le Fevre* v. *Toole,* 84 N. Y. 95. In this connection it may be observed that the deeds made by the court in pursuance of a judicial sale to pay debts, simply carries out a direction of the will which the executrix was empowered and directed to do. It could have been done without suit. No necessity for a suit to sell the real and personal property to pay the indebtedness is perceived. There seems to have been no controversy over the amounts of the various notes and claims constituting the indebtedness. Those claims not secured by liens were reduced to judgments at law.

It is apparent that the property at the time of the testator's death was far in excess of the indebtedness, including the indebtedness thrown upon the estate by the J. V. Thompson bankruptcy. The rents from the office building alone (which the commissioner's report estimated at $12,000.00 per year and which was confirmed without exception on that point), two-thirds of which at least would have been applicable to the debts, and is now equitably applicable, would have greatly reduced them leaving to the widow a life estate more valuable than her dower. The accumulation of interest on the indebtedness over a period of about ten years swells the debts to about $192,428.87. Just what amount of interest goes to make up this total indebtedness cannot be determined from

the commissioner's report. The judgments drew interest from the date of judgment, and if interest was calculated on the debts up to the date of judgment, there would be a compounding of interest. It appears that within a year or so after the death of the testator the administratrix was offered $200,000.00 for the office building. The interest entering into the total indebtedness reported had not then accumulated except in a negligible amount.

Considering the property, indebtedness, situation of the testator and the circumstances surrounding him likely to influence him, he made the will giving to his widow a life estate in property, which life estate was more valuable than her dower, coupled with a contingent inheritance in fee. Her claim to dower, if allowed would disturb the testamentary disposition. . We therefore conclude that the lower court has correctly ascertained the testator's intention to be that the provision for the wife. was in lieu of dower. Under our statute and the decisions of this court, renunciation of the will must be made by the widow within one year from the probate thereof, where the will contains a provision for. her in lieu of dower, otherwise she shall have no more than is given her by the will. *Bruceton Bank* v. *Alexander,* 83 W. Va. 573; *Adams* v. *Adams,* 95 W. Va. 187. The effect of total failure of the provision made for the wife, dealt with and considered in various cases cited from other jurisdictions, upon the failure of the widow to renounce, does not apply to the case under consideration, for by virtue of the will she has received and appropriated something more than $100,000.00 according to the pleadings and proof as now developed.

Generally, where the will gives the widow a life estate in property in which she has dower, that simple fact does not put her to an election, because there is no inconsistency between dower and the life estate. The dower is not merged in the life estate. So many decisions hold. See *Church* v. *Bull* (N. Y.) 43 Am. Dec. 754; *Sanford* v. *Jackson,* 10 Paige 266; *Metteer* v. *Wiley,* 34 Ia. 214; but see *Parker* v. *Parker,* 129 Ia. 600, and *Re Stevens' Estate,* 163 Ia. 364, reviewing the Iowa decisions. It seems that if to award the widow her distributive share would disturb the other provisions of the will,

she is put to her election.) *McDermid* v. *Bourhill,* 101 Ore. 305, 22 A. L. R. 428, and annotations. However, there are contrary decisions. *Stark* v. *Hunton,* 1 N. J. Eq. 216; *Smith* v. *Bone,* 7 Bush. 367; *Hamilton* v. *Buckwalter,* 2 Yeates 389. See *Re Estate of Zahrt,* 94 N. Y. 605.

There can be little question that the widow elected to take under the will. She qualified as executrix nominated as such by the will, and without surety on her bond, took charge of all the property and managed and controlled the same as executrix. She collected the rents as such until December, 1920, after which time she collected as Winnie M. Jacobs. In her petition she avers that she has had continuous possession of the home and office building in her individual capacity since the death of her husband. In her settlement she makes no account of the rents. She disposed of about $30,000.00 worth of personal property, and about $16,000.00 worth of real estate, making deeds for the latter, for which she accounts. The very well established rule is that where a widow is required to elect between a provision for her and her dower, any unequivocal act dealing with the property as her own, done with knowledge of her right to elect, is held to be an election by her to take under the will and waive dower. 1 Pom. Eq. Jur. (4th ed.) Sec. 515, page 979. However, our statute quoted requires renunciation of the will within one year from its probate. She must act promptly; and if she fails to do so, it is at her peril.

It is argued that she should not now be deprived of her election to take dower, because the life estate was so uncertain and precarious and she should not be bound by the statute until she had full knowledge of the facts and circumstances and the value of the gift, citing *Paylon* v. *Bowen,* 14 R. I. 375; *Milliken* v. *Welliver,* 37 Ohio St. 460 and many other cases of like import. It is argued that she could not know that Thompson would go into bankruptcy in 1917 and thus by the loss of the value of the Thompson notes the estate would be subject to an extensive loss. To extend the time in which a widow is required to elect would emasculate the statute. It may be that if by fraud or misrepresentation of the personal representative, executor, or some devisee or legatee,

a widow, relying thereon, is prevented from promptly renouncing the will, equity would relieve. *Whitesell* v. *Strickler,* 167 Ind. 602, 119 Am. St. Rep. 524; *Eddy* v. *Eddy,* 168 Fed. Rep. 590. But the statute is one of limitation, and it is her duty to inform herself of the condition of the estate and act within the time prescribed. *Akin* v. *Kellogg,* 119 N. Y. 441, 23 N. E. 1046; 1 Pom. Eq. Jur. Sec. 512, page 970. Besides, it is not shown that she was not informed of the debts. As executrix she had abundant and peculiar opportunity for investigation and information; and in 1916 she had then ascertained that there were more debts than could be paid by the large amount of personalty. Thompson's bankruptcy occurred in 1917, and she continued to take the benefits from the life estate from that time until after the decree of July 3, 1923, was entered. She waited too long to be relieved of the bar of the statute on the ground of mistake of fact, even if equity could stop the running of the statute.

Counsel for appellant also contend that if the will be construed to give the widow a life estate in all the personalty and realty, with contingent fee, all in lieu of dower, then the provision for her is a jointure, and upon failure of her jointure by title paramount or the assertion of debts of the testator she shall be dowable in so much of the real estate whereof, but for said jointure, she would have been dowable, as is equal in value to that of which she has been deprived. Sec. 6, Chap. 65 Code. There is merit in this contention. In England, before the time of Henry VIII, wives were deprived of dower by conveyances to uses, a widow not being endowable of an use; and in order to protect the wife it became the usual custom of the husband before marriage to take an estate from his feoffees and limit it to himself and his intended wife for their lives in joint tenancy, or "jointure", in order to protect the wife in case of his death. When the statute of uses was enacted transferring the legal title to those who were entitled to the use of the land, widows were not only entitled to their jointures which had been settled on them, but in addition thereto, to dower in the other lands, which inequality brought about the Statute 27, Hen. VIII, providing that where a married woman already had jointure, or thereafter jointure was

made to her, she should not then have dower in any of the residue of her husband's lands; but if she did not have jointure then she should have dower. Thus "jointure" was evolved, and has come down to us with changes through the act of the Assembly of Virginia of 1785, Chap. 65, and the Codes of 1819 and 1860. Sections 4, 5 and 6 of Chap. 65 are the same as Sections 4, 5 and 6 of Chap. 110, Code of Virginia of 1860. If the estate, real or personal, devised to a widow is intended to be in lieu of her dower she has a legal jointure, and is required to elect. She must either abandon her dower or the provision made for her in the will. *Shuman* v. *Shuman*, 9 W. Va. 50, 54. "The doctrine of election is founded on the same reasons and governed by the same rules when applied to a widow claiming dower, as when applied in any other case." *Dixon* v. *McCue*, 14 Grat. 540. Pomeroy's Equity Jur. (4th ed.) Secs. 464-5, says that the true basis of the doctrine of election is founded on the principle that he who seeks equity must do equity. We have hereinbefore noted that Mrs. Jacobs has by her failure to renounce, and by her subsequent acts in taking the benefits of the provision made for her, elected to take under will, and that she is barred of dower. Her petition is for an assignment of dower, either in kind or in money, as she may elect. Her theory is that she could claim both dower, the life estate, and contingent fee without election. She is not suing on the theory that she had a jointure of which she has been legally deprived. But the statute says that if she be "lawfully deprived of her jointure, or of any part thereof, she shall be *endowed* of so much of the real estate whereof &c." At the time her petition was filed there had been no sale of the office building. It was not apparent that she had or would be totally deprived of her jointure, for the sale of the office building, reported to be worth $200,000.00, might discharge all of the indebtedness, with surplus left over for her use during life, including the personal property yet in her hands valued at $24,333.33. At the time the decree complained of was entered (and which dismissed her petition), it became apparent that her jointure might or might not be entirely lost to her by the assertion of the debts. The petition asks for dower, and under the prayer for general relief, it

being apparent that she may have some right thereto upon further development of the case, we are of the opinion that it was error to then dismiss her petition and hold that she was entitled to no relief. The petition was broad enough to include a claim for dower by reason of a failure of jointure by lawful deprivation. Minor in Vol. 1 of his textbook on Real Property, seems to hold that the deprivation of the jointure under the Virginia statute must be by title paramount, which is the holding under the English statute. Has there been a total or partial deprivation of the jointure? It is difficult to determine from the case as now developed. What was the value of the jointure at the time of the widow's election to take under the will? The appraised value of the estate is only persuasive. The amount of debts then existent is not shown. The amount the widow has received under the will (the rents, issues and profits) is uncertain. It is estimated that a part of the time she received $12,000.00 per year, and a greater sum the other part. One witness estimates that she spends about $8,000.00 per year in the upkeep of the office building. The net amount she has collected is an important item in determining whether there has been a total or partial failure of her jointure. It will be observed that the will directs the debts to be paid by sale of the personalty or realty. They are charges upon the real estate. The debts would have to be paid. It indicates that it was in the remainder of the estate after paying the debts, that the widow took the life estate. The testator was just to his creditors before being generous to his survivors. And as before suggested, it was the duty of the widow to ascertain the indebtedness before making her election. Whether the value of the estate has depreciated by reason of the delay in carrying out the direction of the will, thus lessening the value of the jointure is not shown, although intimated by the fact that the office building could have been disposed of several years ago for $200,000.00. For these reasons, and perhaps others, the present status of the case will not justify an adjudication as to whether there has been a total or partial failure of the widow's jointure; or if the latter, to what extent. It is usual and proper in such cases to remand the cause for the purpose

of further inquiry and decision. *Atkinson* v. *Sutton,* 23 W. Va. 197.

In holding that the petition is broad enough to assert a claim for dower by reason of a total or partial failure of jointure, it is apparent that the other defenses interposed, namely, former adjudication by the decree of July 3, 1923, and the bar of the statute of limitation in the assertion of the common law right of dower, would not be availing from the case as it is now developed. We are of opinion to reverse the decree of February 4, 1925, and remand the cause for further proceedings.

After decree of sale, and pending appeal therefrom, a receiver was appointed to take charge of the office building upon petition of creditors, by order and decree entered February 7, 1925, and from this decree Mrs. Jacobs appealed. The petition details the various steps which had been taken in the litigation, including the suspension of the decree of February 4, 1925, in order that application for appeal could be made therefrom, and avers that Hutchinson, the purchaser, the widow, and the creditors are each claiming the benefit of the rents, issues and profits of the office building ($2,000 per month) pending the application for appeal, and during the appeal if one should be granted; while, on the other hand, the building needs repairs and protection by insurance. It is averred that the widow is financially irresponsible, and that the petitioners are not only entitled to the corpus of the real estate, but to the rents therefrom, the corpus not being sufficient to pay off the debts against it. The prayer is for the appointment of a receiver to preserve the property, collect the rents and hold the same for distribution to those found to be entitled thereto. The widow demurred to the petition and answered. The answer admits many of the allegations of the petition, but denies that the building is not properly insured, claims ownership by respondent of the rents, and denies the necessity for the appointment of a receiver.

The record discloses that the corpus of the estate is not now sufficient to fully pay the debts, swelled as they are by interest for many years and getting larger, irrespective of the

final outcome of the widow's claim for failure of jointure. Since about 1920 she has been taking the rents in her individual capacity, ostensibly as life tenant under the will. Generally the appointment of a receiver is a matter of discretion to be governed by the circumstances of the case, one of which is the strong probability of the applicant's right to ultimate recovery. It is a discretion to be exercised with caution, and a receiver should never be appointed except in a strong case. *Grantham* v. *Lucas*, 15 W. Va. 425. It is not perceived in this case how the appointment can produce injury to any of the parties litigant, except in the item of costs of the receivership, which is controlled by the court. The appointment is justified by the case of *Moran* v. *Johnston*, 26 Grat. 108 and by *Beard* v. *Arbuckle*, 19 W. Va. 145, in which latter case the court held: "In a proper case, a circuit court, to preserve the rents and profits of real estate, the sale of which is superseded, may upon the petition of the creditors appoint a receiver, notwithstanding the case is pending in the Supreme Court of Appeals upon a supersedeas."

The decree of February 7, 1925, appointing a receiver is affirmed.

> *Decree denying dower reversed; cause remanded.*
> *Decree appointing receiver affirmed.*