# CHARLESTON.

MINNIE J. RAU *et al* v. COLLIN C. KREPPS *et al*.

(No. 5348.)

Submitted March 30, 1926. Decided April 13, 1926.

1. WILLS—*When Testator Devises Property in Which he Has Limited Interest, as if Interest Were Absolute, and Makes Substantial and Valid Bequest to One Owning Conflicting, Dominant Right in Property, It Is Patent That Testator Intended to Liberate Property From One Adverse Right, and a Case for Election by Beneficiary Is Presented.*

When a testator devises property in which he has only a limited interest, as if his interest were absolute, and makes a substantial and valid bequest to one owning the conflicting, dominant right in the property, it is patent that the testator intended to liberate the property from the adverse right, and a case for election by the beneficiary is presented. (p. 350.)

2.   SAME—*When Such Beneficiary Elects to Take Under Will, He Must Renounce Every Right Inconsistent With Its Full Effect and Operation.*

When such beneficiary elects to take under a will, he must renounce every right inconsistent with its full effect and operation.   Pt. 1, Syl., *Tolley* v. *Poteet,* 62 W. Va. 231, approved.   (p. 354.)

3.   SAME—*Exercise of Acts of Ownership by Beneficiary Over Such Bequest Ordinarily Constitutes Sufficient Evidence of His Election to Take Under Will.*

The exercise of acts of ownership by the beneficiary over such a bequest ordinarily constitutes sufficient evidence of his election to take under the will.   (p. 354.)

4.   SAME—*Election Made by Competent Person, With Full Understanding of Facts and His Rights, is Final.*

An election made by a competent person, with full understanding of the facts and of his rights, is final.   (p. 353.)

5.   SAME—*Absolute Gift Made in One Clause of Will, Cannot be Taken Away or Limited in a Subsequent Clause, Except by Provisions Which Are Equally Clear and Decisive as Words of Donation.*

An absolute gift made in one clause of a will, cannot be taken away or limited in a subsequent clause, except by provisions which are equally clear and decisive as the words of the donation.   Pt. 11, Syl., *Bell's Admr.* v. *Humphrey,* 8 W. Va. 1, approved.   (p. 355.)

Error to Circuit Court, Jefferson County.

Action by Minnie J. Rau et al. against Collin C. Krepps et al.   Judgment for plaintiff, defendants bring error.

*Reversed and remanded.*

*Brown & Brown, Campbell & Hannis* and *Martin & Seibert,* for appellants.

*Frank L. Bushong* and *Tracy L. Jeffords,* for appellees.

HATCHER, JUDGE:

Louise Krepps died in 1917, leaving a will which contains the following provisions:

FIRST: I direct that all my just debts and funeral expenses be paid as soon as practicable after my decease.

SECOND: I give and bequeath unto my beloved husband, Collin C. Krepps, all and singular, the personal property of every kind and nature and wheresoever situated, of which I may die possessed, to have and to hold for his own use and benefit forever.

THIRD: I give, devise and bequeath unto my beloved husband, Collin C. Krepps, the use and occupation of my real estate located at Bolivar, Harpers Ferry, W. Va., during his natural life.

FOURTH: I give, devise and bequeath unto my Executors and Trustees hereinafter named, my real estate located at No. 198 Dekalb Avenue, in the Borough of Brooklyn, City and State of New York, in trust however to collect the rents thereof and to pay the income, after deducting taxes, water rates, interest on mortgages, to my beloved husband, Collin C. Krepps, and my daughter, Lulu Krepps, that is to say, one half thereof each.

The payments to my daughter, Lulu Krepps, out of the income therefrom to cease upon her marriage, and the whole income therefrom to be paid to my husband, Collin C. Krepps, during his natural life. It is intended that the trust hereby created shall cease and determine on the death of my husband, but in the event that an opportunity should arise to sell the above premises advantageously, that then my Executors and Trustees hereinafter named shall be authorized and empowered, upon the consent of all my legatees and devisees, to sell the same and to execute good and sufficient instruments in writing conveying the same, the proceeds thereof to be held in trust as hereinbefore provided.

FIFTH: In the event of the death of my said husband, Collin C. Krepps, before my daughter, Lulu Krepps, then and in that event, I give, devise and bequeath all my estate, both real and personal in the following proportions.

Unto my daughter, Lulu Krepps, if unmarried at the time of death of my said husband, a sum equivalent to two thirds of my entire estate, and if married a sum equivalent to one third of my entire estate.

Unto my daughter, Minnie J. Rau, a sum equivalent to one sixth each of my entire estate, or in the event of my daughter, Lulu Krepps, being married as aforesaid, one third of my entire estate.

Unto my grand-daughters, Irene Krepps and Minnie Krepps, the children of my son, Joseph H. Krepps, a sum equivalent to one twelfth each of my entire estate, or in the event of my daughter, Lulu Krepps, being married as aforesaid, one sixth each of my entire estate.

It is my will, and I hereby order and direct in case any person named in this will as legatee and devisee, shall file objections to its probate, or in any manner or form contest any of its provisions, that then the provision, legacy or bequest, to such person or persons shall be and hereby is revoked and annulled inoperative and void.

SIXTH: I hereby nominate, constitute and appoint my husband, Collin C. Krepps, and my daughters, Minnie J. Rau and Lulu Krepps, Executors and Trustees of this my last will and testament.

C. C. Krepps was the second husband of the testatrix. The children referred to in the will were by her first husband, but had been adopted by Krepps.

At the date of her death, the testatrix was obligated as follows: to the Lawyer's Title and Trust Company, $1500.00, and to C. C. Krepps, $10,000.00, with interest from July 1, 1910, both of which debts were secured by mortgages on the New York property; to C. C. Krepps, $2,500.00 with interest from July 28, 1923, secured by a deed of trust on the West Virginia property; to the Bank of Brunswick for a note of $1,500.00, executed jointly by the testatrix and C. C. Krepps; and to several other parties for smaller amounts.

The will was probated in Jefferson County, W. Va., on August 24, 1917, and the executors named in the will qualified as such. C. C. Krepps assumed active charge of the estate until August, 1919, when he resigned. His accounts were settled before a Commissioner of Accounts for Jefferson County up to Jan. 1, 1919. Shortly after the death of the testatrix, Krepps appropriated several articles of jewelry and gave to Lulu Krepps and Mrs. Rau jewelry to the value of $1700.00,

from the personal property of the testatrix. On Oct. 15, 1919, he leased to Mrs. Rau the Bolivar property and the furniture therein of the testatrix, for a period of one year, with the right of renewal for five years.

On Oct. 20, 1919, Krepps instituted a suit in New York against the executors and heirs of Louise Krepps for the purpose of collecting the mortgage of $10,000.00 and its accrued interest, of barring and foreclosing the equity of redemption in the mortgaged premises, and of securing a judgment against the executors for any deficiency on his claim which might remain after applying thereto the money derived from the sale of the mortgaged premises. Personal service was had on Joseph Krepps and his daughters Irene and Minnie, who resided in New York. An appearance was made for Mrs. Rau and Lulu Krepps by attorney. C. C. Krepps had assured Mrs. Rau and Lulu Krepps that he intended to buy the New York property as cheaply as possible and then "to get this piece of property in Bolivar" and give it to them. On Dec. 18, 1919, Krepps (individually) paid the note of $1500.00 due the bank of Brunswick. On Jan. 26, 1920, the New York court adjudged that the amount due Krepps on the Mortgage was $14,781.39, and decreed that the mortgaged property be sold by a referee (then appointed for that purpose) at public auction and that if the proceeds of the sale were insufficient to pay the amount due with costs, that the plaintiff have judgment for such deficiency against Mrs. Rau and Lulu Krepps, as executrices. The referee filed a report on March 26, 1920, showing a sale of the property to C. C. Krepps for the sum of $11,000.00, and reporting that after including the referee's fees and the costs of sale, the price brought by the property lacked $4,457.07 of satisfying the claim of Krepps and the costs of the proceeding. After the New York suit was terminated Krepps said he "changed his mind" about giving the Bolivar property to Mrs. Rau and Lulu Krepps.

At July Rules, 1920, Mrs. Rau and Lulu Krepps brought a suit in chancery in the circuit court of Jefferson County, in which they asked for a construction of the will, and sought to surcharge and falsify the accounts of Krepps, as executor.

At March Rules, 1922, while that suit was pending, Krepps brought a suit in the said circuit court, in behalf of himself and all other creditors of Louise Krepps, against Mrs. Rau and Lulu Krepps, individually and as executrices, for the purpose of subjecting the West Virginia property to the payment of his and other debts against the estate of his deceased wife. The bill alleged that there was due Krepps from the estate (a) $2500.00 and interest from July, 1913, secured by the deed of trust against the West Virginia property, (b) $4457.07, the balance ascertained by the referee in the New York suit, and (c) $1500.00 paid by Krepps to the Bank of Brunswick on the joint note executed by him and Louise Krepps, the proceeds of which he alleged were applied at her direction to the payment of her debts.

The two causes were consolidated, and referred to a commissioner, who reported the total amount due Krepps from the estate of Louise Krepps, after making certain deductions, to be $10,260.05. The only other debt reported by the commissioner against the estate, was one in favor of B. F. Gardner for $305.85. The court sustained two exceptions relating to items allowed Krepps, and after reducing his claim to $9947.15 as of Dec. 31, 1923, otherwise confirmed the report. Recoveries in favor of Krepps and Gardner, respectively, were decreed by the court, and upon failure of payment within thirty days, the personal property and the West Virginia real property of Louise Krepps were decreed to be sold. From this decree Mrs. Rau and Lulu Krepps have appealed.

Several errors were charged against the decree in the petition and brief of the appellants, but their counsel admitted in argument that the vital questions involved relate to the election of Krepps to take under the will of his wife.

Many different definitions of election are found in the decisions and other authorities. We see no objection to the one proposed by counsel for Krepps, and credited to *Allison* v. *Allison,* 99 Va. 472. ''Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both.'' This definition is the same one adopted by Story

in his Eq. Juris., par. 1075, by Underhill, in the Law of Wills, Vol. 2, par. 726, and by Cyc., Vol. 40, p. 1959. The definition in Cyc. is augmented as follows: "In order to render an election necessary it must appear in the will that there was a clear intention on the part of the testator to dispose of property over whose disposition he has not, as against the party put to his election, the power of disposal, and that in compensation to such party for the property of which it is thus attempted to deprive him, the testator makes a valid gift to him of property absolutely and actually owned by the testator, the will thus showing an intention on the part of the testator that the beneficiary shall choose whether he will keep that which is already his or renounce it and take in lieu thereof that which the testator gives him". See also 11 A. & E. Ency. of Law, p. 59, Redfield on Wills, Vol. 2, p. 737, Alexander on Wills, par. 813, *Bennett* v. *Harper,* 36 W. Va. 546, *Jacobs* v. *Jacobs,* (W. Va.), 131 S. E., 449 (Adv. Sheets).

Under the West Virginia statutes existing in 1917, C. C. Krepps was entitled to a life estate in the Bolivar property, and to a one-third of the personal property of the testatrix. In New York the common law requirements of curtesy still prevailed. *Yung* v. *Blake,* 148 N. Y. S. 557, *Sanford* v. *Getman,* 206 N. Y. S. 865. There is no evidence that issue was born of the Krepps marriage; consequently we must assume that Krepps was not entitled to curtesy in the New York property. Therefore the benefits tendered him by the will which he could not claim under the law, were two-thirds of the personal property, and one-half of the rents from the New York property after deducting taxes, water rates, and interest on the mortgages. If the testatrix had not been indebted to her husband, it could well be argued that the bequests to him in the will were in lieu of curtesy. But, when a maker of an instrument is indebted to one, to whom a substantial gift is made, thereby without explanation, the question necessarily arises, was the gift intended to cancel the obligation. In this will no specific reason is given for the donations to Krepps. In seeking the purpose of the testatrix, however, we are not limited to express declarations, but may gather the intention from the will as a whole. *Hagan* v.

*Holderby*, 62 W. Va. 106, (111) ; *Bartlett* v. *Petty*, 92 W. Va. 608; *Jacobs* v. *Jacobs, supra.*

In order to apply intelligently the doctrine of election it is necessary to consider briefly the situation existing at the time Mrs. Krepps died. By virtue of the deed of trust, she had conveyed away the legal title to her West Virginia property. *Taylor* v. *King,* 6 Munford, 358. She still had the right (1) to redeem the property from the lien by payment of the debt secured, (2) to receive any surplus over her husband's claim which the property might bring at the trustees' sale, and (3) to occupy or receive the rents and profits from it prior to such sale or the sequestration of the rents. *Cox* v. *Horner,* 43 W. Va. 786. She could legally devise no greater rights in the West Virginia property than those enumerated. Much the same situation existed as to the New York property, except that under the New York decisions, the mortgage did not deprive her of the legal title to her real estate. Jones on Mortgages, par. 44. Her rights in the real estate were therefor limited and partial. Yet she devised her properties as a sovereign and not as a subject.

The amount of her indebtedness to Krepps was so much larger than the value of her personal property that an enforcement of his demands would have occasioned the sale of at least one of her real properties. Had the trustee sold and conveyed the West Virginia real estate, the trustee's deed would have conveyed an absolute title to the purchaser. The same result would have followed the foreclosure of the New York mortgage. The remainders devised by the will would have become extinguished. In devising the remainders the testatrix was therefore attempting a disposition of her real properties which she had not, as against the rights of her husband, the power to make. If he enforced his liens, the devolution of the title as planned in the will would fail. In the quaint language of an early English chancellor, such enforcement would "disappoint the will". The disposal of her properties in the manner provided in the will shows an unmistakable intention of her part to devise the entire and absolute rights therein free from the claims of her husband. As compensation to Krepps for ratifying the will, she offered

him two thirds of all her personal property and the moiety in the New York rents. Acceptance of the bequests and enforcement of the liens were inconsistent. The will therefore imposed on him the choice of accepting its bounty and conforming thereto, or of rejecting its benefits and enforcing his liens. It was not material that the bequests were of less value than his liens. He was under no legal obligation to accept the bounty of the testatrix. His acceptance or rejection was entirely optional. *Caulfield* v. *Sullivan,* 85 N. Y. 153. "If a testator is only entitled to a partial interest in the property, as where he owns an undivided share, or a future estate, or holds the property subject to some encumbrance or charge, and uses language of description and donation, which shows an unmistakable intention on his part to dispose of the entire property, or the property free from the existing encumbrances or charge, and if the owner of the other part or holder of the encumbrance or charge also receives benefits under the will, then a case for an election by such beneficiary is presented. The grounds of the election in such cases were accurately stated by Lord Redesdale in a decision which has since been regarded as leading: 'The general rule is, that a person cannot accept and reject the same instrument, and this is the foundation of the law of election.' " Pomeroy's Eq. Juris. par. 488. To the same effect is Story's Eq. Juris. par. 1096. See also *Baker* v. *Litton,* 311 Ill. 453, 143 N. E. 64.

We have not overlooked the clause in the will directing payment of debts. But, as was held in *Swan* v. *Swan' Ex.,* 136 Va. 496 (517), we regard that clause as merely a formal and general expression, found in the majority of wills, and without special application to the liens of Krepps.

The next inquiry is, which alternative did Krepps elect? He assisted in the probation of the will. He served as executor thereof for nearly two years, during which time he advanced no claims against the estate. He took into his possession the personal property of the testatrix shortly after her death. He says he did so under his authority as executor. This explanation is not consistent with the fact that he took and kept as his own parts of the personal property, and made valuable gifts therefrom to Mrs. Rau and Lulu Krepps. While

executor he collected more than $800.00 in rents from the New York property, which he kept and did not account for. He leased the furniture· of testatrix in connection with the Bolivar property for a term of years and has collected and retained valuable rentals therefrom.  Krepps is a careful business man, and he would not have made this disposition of the personal property unless he had considered it as his own under the will.  In his bill against Mrs. Rau and Lulu Krepps, he admits ''trying hard to carry out the plan of the will of his deceased wife'' for nearly two years, and alleges in regard to making the lease to Mrs. Rau, that he ''did· so at the time under the color of the title, as he was by the express terms of said decedent's will a life tenant as to the realty and absolute owner of the personalty, for life or longer''.

Election may be implied from the acts of a party as well as by express declaration.  Exercising acts of ownership over bequeathed property for a considerable period of time, as was here done by Krepps, constitutes sufficient evidence of election to take under a will.  *Adams* v. *Adams,* 95 W. Va. 187 (196) ; Alexander on Wills, par. 826; 11 A. & E. Ency, of Law, 99 ; 40 Cyc. 1976 *et seq.;* Pom. Eq. Juris., par. 515. We therefore hold that Krepps elected to take under the will.  The testimony of Krepps shows that he is an intelligent and well informed man.  He had full knowledge of the relative value of the bequests to him and the value of his liens. If he did not have information of both his rights and his liabilities in regard to the will it was his own fault, as he admits consulting E. Klempston, a New York attorney, as to the will.  The lease of the property to Mrs. Rau was made after this conference.  He still retains all the rental from that lease.  He testifies to no misconception of fact.  He does not allege ignorance of the legal effect of an acceptance of the bequests.  A court of equity is not inclined to indulge Krepps with inferences favorable to him which he has not claimed. He admits misleading his adopted daughters about giving them the Bolivar property.  He admits intending to purchase the New York property, having in mind securing in the foreclosure suit as large a ''deficiency judgment'' as possible against the estate of his dead wife.  He admits that the advice

he sought from the New York attorney while he was executor, related to his personal interests—he called Mr. Klempston "my attorney"—yet he charged the Klempston fees to the estate. Other expenditures improperly charged to the estate could be pointed out. Such conduct does not merit judicial indulgence. We therefore conclude that his election was intelligently made. The law gives finality to such an election. "An election when made by a competent person with a full understanding of his rights and a reasonable knowledge of the facts, is final." Underhill, *supra,* par. 731. See Pom. Eq. Juris. par. 516; *Penn* v. *Guggenheimer,* 76 Va. 839; 11 A. & E. Ency. Law, 109; 40 Cyc. 1987.

By his election to take under the will, Krepps is estopped from enforcing against the estate any claim that will disturb the general plan of the will. This doctrine was announced in England as early as 1736 in the leading case of *Streatfield* v. *Streatfield,* 724 (727), 25 Eng. Reprints. "When a man takes upon him to devise what he had no power over, upon a supposition that his will will be acquiesced under, this Court compels the devisee, if he will take advantage of the will, to take entirely, but not partially under it; there being a tacit condition annexed to all devises of this nature, that the devisee do not disturb the disposition which the devisor hath made." This rule was restated in *Blake* v. *Bunbury,* in 1792. "Where a man has subjected his estate to special limitations or incumbrances, and by his will makes a new disposition of the same estate free and discharged from the incumbrances, or under different limitations; the incumbrancers, deriving other interests under the will, if they take by it, must not disappoint it; but must permit the estate to go in the new channel, and as free from incumbrances as the testator intended." 30 Eng. Reprints, 464 (469). This principle was adopted without hesitation by the early Virginia courts. *Upshaw* v. *Upshaw,* 2 Hen. & M., 379 (392); *Kinnard* v. *Williams,* 8 Leigh, 400 (408). It has been consistently recognized by the West Virginia court. *Shuman* v. *Shuman,* 9 W. Va. 231; *Moore* v. *Harper,* 27 W. Va. 362; *Tolley* v. *Poteet,* 62 W. Va. 231; *Wiley* v. *Ball,* 72 W. Va. 685; *Jacobs* v. *Jacobs, supra.* "One entitled to any benefit under a will or other instrument

must, if he claims that benefit, abandon every right and interest, the assertion of which would defeat even partially any of the provisions of that instrument.'' *Tolley* v. *Poteet, supra.* For further illustration, see *Hall* v. *Hall* (Ind.) 1 Bland, 130; *Miller* v. *Cotten,* 5 Ga. 341; *Hyde* v. *Baldwin,* (Mass.), 17 Pick. 303 (308); *Havens* v. *Sackett,* 15 N. Y. 365; *Graham* v. *Dodge,* 122 Ill. 528.

Our decision applies only to the West Virginia property. Whatever rights the plaintiffs and other devisees of Mrs. Krepps had in the New York real estate under her will were disposed of in the New York suit to which they were all parties. That suit, however, is not *res adjudicata* as to the West Virginia property, because it was simply an action to foreclose the New York mortgage, and no construction of the will or other relief was sought by Krepps in that case.

The gift of personal property to Krepps in the second paragraph of the will, being ''for his own use and benefit forever'' is so clearly and positively expressed, that the repugnant provision in the fifth paragraph will not be construed to limit the bequest to a life estate. It is an established rule in the construction of wills that an absolute gift, unequivocally made in one clause, cannot be taken away or limited in a subsequent clause, except by provisions which are equally as clear and decisive as the words of donation. *Bells Admr.* v. *Humphrey,* 8 W. Va. 1; *Kesterson* v. *Brown,* 94 W. Va. 447; *Smith* v. *White,* 107 Va. 616 (621); Underhill on Wills, par. 358; 40 Cyc. 1415. We accordingly hold that under the will, C. C. Krepps takes an absolute interest in the personal property and a life estate in the Bolivar property, subject to the rights of creditors of the estate of his deceased wife. For the reasons given the decree of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*